JOHNSON *v.* THE STATE.

1. The court did not err in instructing the jury that the burden was upon the State to make out its case, but that the burden of proof may be carried by the State by showing that the person alleged in the indict-ment to have been killed was killed as charged, and that when the State showed such a killing in the way charged in the indictment, then the persons shown to have committed the offense are presumed to be guilty of murder, and the burden is shifted to the defendant or defendants to show their justification or such facts and circumstances as would be

sufficient in law to reduce the offense from murder to some lower grade of homicide.

2. Nor did the court err in charging the jury as follows: "So here, gentlemen, if one of these defendants was the actual perpetrator of the crime charged in this indictment, and the other was present, aiding, encouraging, and accompanying him for the purpose of taking the life of James Small, and it was the joint act of both of them, then each of them, in law, would be equally guilty."

3. The defendant, while admitting that he was present at the time of the homicide, having accompanied his codefendant, ·who was the actual perpetrator, to the scene of the crime, insisted that he did not participate in the criminal intent, and that instead of encouraging the actual perpetrator to commit the ·crime he endeavored to. persuade him not to slay the decedent. In view of these contentions the court properly instructed the jury as follows: "If one of these defendants did not participate in the act of taking the life — of firing the shot that took the life of Small, if he did not carry any criminal intent with the other defendant, if he wasn't present for the purpose of encouraging him, aiding him, or abetting him in the unlawful act, and didn't in anywise participate in that unlawful act, or in the unlawful intent to commit the act, he would not be guilty."

4. The charge of the court in regard to the contention of the defendants upon the subject of justifiable homicide was not perfectly adapted to the evidence and the contentions made, but was substantially correct, and, when read in connection with the other parts of the charge, could not have misled or confused the jury.

5. The direct positive evidence in the case showing that the defendant had accompanied the actual perpetrator of the crime to the place of its commission, that he was standing by at the time, and that he knew for what purpose the slayer went to the place, it was not error for the court to omit a charge upon that rule of circumstantial evidence involved where the entire case rests upon evidence circumstantial ·in character. (FISH, C. J., and ATKINSON, J., dissent.)

No. 2823. DECEMBER 16, 1921.

Indictment for murder. Before Judge Blair. Cherokee superior court. September 1, 1921.

*A. J. Henderson, Myer Goldberg,* and *John S. Highsmith,* for plaintiff in error.

*George M. Napier, attorney-general, John S. Wood, solicitor-general,* and *Seward M. Smith, asst. atty.-gen.,* and *Lindley W. Camp,* contra.

BECK, P. J. George Johnson and John Johnson were jointly indicted and tried for the murder of one James Small. The jury trying the case returned a verdict of guilty, with a recommendation to the mercy of the court. John Johnson made a motion for new trial, which was overruled, and he excepted.

The evidence in the case shows that the decedent was found dead on the 27th day of April, 1921, and it was shown that he came to his death as the result of a gunshot wound. He was in a kneeling position near the fireplace in the house in which he lived. The evidence introduced by the State shows that the two defendants, John and George Johnson, were seen about daybreak to approach the house of the decedent. George was a youth of about 18 years of age, and John, the codefendant, was his father. They came within a few steps of the window that opened into the room where the deceased was found dead. Approaching the window, George thrust his gun through and fired, according to the testimony of an eye-witness, and the father was but a few steps from him. The defendant George Johnson admitted that he did the killing. The sheriff testified that George talked freely the morning he was arrested and afterwards, declaring that the decedent had threatened his life, and further declaring that he thought he would kill him first; said that he was afraid of him, as he had made threats against his (defendant's) life. The sheriff testified as to a conversation he had with defendant John Johnson after the killing, as follows: " He [John Johnson] said he tried to keep George from going there, after he said he was going to kill Black Jack [the decedent]; he said he did not want him to kill him, but he told him if he didn't let him alone he would kill him. He said he talked all the way down there and tried to keep him from killing the negro, but George insisted on it." The defendant John Johnson, in his statement to the court and jury, said in part, after referring to certain threats which had been made by the decedent: " George says, ' I am going to lay off to-day and go down there and kill him,' and I says, ' George, I wouldn't do that,' and he says, ' Yes, I am going to shoot him about running over my mother and sister,' and we went down the hill, and I tried to stop George, and George says, ' Let me alone, I will shoot you,' and I run George plumb down in the yard, and I said, ' George, don't shoot James,' and I say says, ' Gus Coggins is the best friend I have got,' and he said, ' I don't give a damn, I am going to kill him.' "

1-3. The rulings made in headnotes, 1, 2, and 3 require no elaboration.

4. In one of the grounds of the motion for new trial error

is assigned upon the following charge of the court: "The defense, that is the contention of these defendants here, presupposes that the person killed was at the time of the killing the aggressor in the conflict, and that the facts and circumstances existing at the time were sufficient to excite in the mind of a reasonably courageous man a fear that a felony was about to be committed upon him, and that in order to prevent the same it was necessary to take the life of the person killed." The defendant George Johnson, who fired the shot that killed the decedent, contended that the homicide was justifiable. As we have seen, the plaintiff in error, John Johnson, while admitting that he was present, contended that he did not participate in the act of taking the life of the decedent, nor in the criminal design, but that he was there for the purpose of dissuading the actual perpetrator of the crime from committing it. The exception to the charge is, that it misstated the defense of the plaintiff in error and confused it with that of the slayer; that justification was no part of the defense of the plaintiff in error. Nevertheless one of the codefendants did plead justification, and the court was required to charge this principle of law. The principle would have been more exactly adapted to the evidence in the case if the court had specifically pointed out that only one of the defendants claimed that the shooting was justifiable; but it is not probable that the jury were confused by the use of the plural in referring to the defendant, as the court had already distinctly stated that one of the defendants denied participation in the homicide, while "the other claimed that he was justified." After that explicit statement, the jury must have understood that the doctrine of justifiable homicide applied only to George Johnson, the actual slayer.

What is said above is necessarily true in view of the nature of the issues made in the case. If it is kept in mind that there is no question that John and George both admitted that they went to the house of the decedent; that George shot and killed him; that John, the plaintiff in error here, accompanied George and was present, standing within a few steps of him when the shot was fired; that John's defense, based upon his statement, was that he went, not as a participant in the criminal act or criminal design, but that he went to the very place itself where the crime was committed, for the purpose of dissuading and deterring the actual perpetrator from shooting the decedent, — it will be clear

that the issue which the jury was to determine was of the simplest kind, and required no elaborate instructions; and the court expressly told the jury, calling attention to John Johnson's defense, that if he was not there for the purpose of aiding and encouraging or abetting the act, he should be acquitted. The jury knew as well as the court or any one else that John was not setting up the defense of justifiable homicide, or that the decedent had done anything to reduce the killing from murder to any lower grade of homicide. They knew that his sole insistence was that he was not a participant in the crime, although present; and when the court distinctly submitted that contention to the jury, the jury could not have been misled.

What we have here said is applicable to the other grounds of the motion complaining of charges of the court.

5. The direct positive evidence in the case showing that the defendant had accompanied the actual perpetrator of the crime to the place of its commission, that he was standing by at the time, that he knew for what purpose the slayer went to the place, it was not error for the court to omit a charge upon that rule of circumstantial evidence involved where the entire case rests upon evidence circumstantial in character.

*Judgment affirmed. The other Justices concur, except*

FISH, C. J., and ATKINSON, J., who dissent from the ruling made in the fifth headnote.