KEY *v.* THE STATE.

No. 9638.   JULY 12, 1933.

*A. M. Anderson* and *Robert E. Brown,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Charles H. Garrett, solicitor-general, B. D. Murphy* and *J. T. Goree, assistant attorneys-general,* contra.

BECK, P. J.   The plaintiff in error was indicted for the murder of his wife, Katie Key, the indictment alleging that he shot Katie Key on October 25, 1932, with a shotgun, with malice aforethought, and caused the wound from which she died.   Upon his trial he was convicted without a recommendation, and was sentenced to suffer the penalty of death.   He filed a motion for a new trial, which he subsequently amended, adding numerous grounds.   Upon the hearing of the motion a new trial was refused by the trial court, and he excepted.

■   Under the evidence adduced by the State, the jury were authorized to return the verdict of guilty.   The defendant admitted firing the shot that caused the death of the deceased, but he claimed that it was accidental.   The defendant said, in part, in his state-

ment: "I am guilty of shooting my wife. It was an accident. . . We were not fussing at the time it was done. Me and her had decided what we would have for breakfast, and she went to take the ashes out of the stove, and I went to work on the car. . . I told her I would go and kill the chicken, and she took the ashes out of the stove, and I got my gun off the rack, and I don't remember whether the gun was cocked or not, but it went off in the floor, and after that she come in, and here was the door and here was the window, and here was the trunk sitting in this corner, and when she got in here I was not looking for her to go back after she looked in the trunk getting a match, and I throwed up the gun to shoot out of the window and she turned right back out of the trunk into the load, and I went to get the doctor as quick as I could."

The wife made a statement after she was shot, which was admitted as a dying statement. A witness, Dr. J. B. Key, testified as to the dying statement which was made after Dr. Key had called in two or three other witnesses. Dr. Key testified: "We took down what she had to say. She wanted to make a statement her husband killed her intentionally. The defendant was still in the office and present when she made this statement. She said she and her husband went to Jones County to see his father, and they went to a party and they had a little fuss, and there is where it started, and when they came back home they had a fuss that night and he beat her up, and the next morning she said she was going to leave, and she was getting her things out of the trunk, and she said when he first shot at her he missed her, and she says, 'You can go and see where he shot in the floor; and the second time he shot at me he told me he was going to kill me,' and the load hit her in the side. I never examined her clothing very closely when she was in my office. When she made that statement she was in a practically dying condition, with no hope of saving her. I had not given her anything to dope her up before she made the statement. She was fully conscious when she made the statement, and talked intelligently." There was evidence corroborating the statement of the woman, especially as to two shots having been fired in the house. And there was also evidence of mistreatment of the deceased by the defendant. And another witness who was present when the deceased was making her dying statement, F. E. Cosey, testified: "Shortly before she died she talked to the defendant. I told him she was going to die,

and asked him if he wanted to talk to her, and he got up to go out of the door one time, and I had to catch him, and he walked to the cot and told her he was sorry and wanted her to forgive him, and she says, 'You know you ought not to have done it, and you know you didn't have any right to do it.'" No attempt is made to set forth a summary of all the evidence in the case. The State introduced several witnesses, and the evidence of more than one of them tended to corroborate the statement made by the woman who was killed. The evidence was amply sufficient to authorize the jury to find the defendant guilty.

■ The grounds of the motion for a new trial are referred to here as they are numbered in the amendment to the original motion. Error is assigned upon the failure of the court to give in charge to the jury § 40 of the Penal Code, which reads as follows: "A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears there was no evil design, or intention, or culpable neglect." The failure to give this section in the language thereof was not hurtful to the defendant, in view of the charge actually given by the judge in the course of his instructions. He charged the jury, in part: "The State contends in this case that the defendant, Eugene Key, unlawfully shot and killed Katie Key, and that such killing was murder. To this statement the defendant demurs and says he did not; while he admits he did the killing, but says that it was a pure accident and that he is not guilty. Those issues you have to pass upon." This succinct charge put squarely before the jury the question as to whether the shooting was intentional or accidental. It would no doubt have been proper to read all of section 40. But if the court had, it might have been necessary to explain what is meant by the expression, "culpable neglect," and the different degrees of negligence. But where the court instructs a jury in a case like this, where the defendant insists that the homicide was the result of an accident, the jury could not be misled or confused, or stand in need of further instruction, where the court informs them that if the shooting resulting in the homicide was an accident, they should acquit. The ruling that is made here covers the exception to the charge contained in grounds 12 and 13 of the motion.

■ In another ground error is assigned upon the failure of the court to instruct the jury that dying declarations "should be re-

ceived with caution." The failure to add this to the charge as given by the court was not error. On the subject of dying declarations the court actually instructed the jury as follows: "Dying declarations made by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, are admissible in evidence in a prosecution for the homicide. So you will see, in order for you to be able to consider this evidence, which ordinarily would be hearsay, the person who made it must be in articulo mortis, or in a dying condition, and they must be conscious of that condition; and when that is the case, they can make a statement as to the cause of death and the person who killed him. In that connection I charge you that dying declarations made by any person in the article of death, and the person who killed him, are admissible in evidence in a prosecution for homicide. The court instructs you further that as to testimony touching what are claimed to be dying declarations, that in order to make this evidence at all for your consideration, you must be satisfied beyond a reasonable doubt that the declarations, if any, were made by the person making them when he was in a dying condition, and that he knew at the time the declaration was made he was in a dying condition; in other words, a person making a declaration is a matter for you to decide whether or not that person was in a dying condition, and whether they knew that; and if either one of these conditions does not exist, the alleged declarations would not be testimony to be considered by you at all; but if both exist, they would become what the law terms dying declarations, and, if made under such conditions, would be testimony to be considered with all the other testimony in the case. So you will see, in order, first, for you to consider what we call dying declarations, you must be first satisfied that the deceased was in articulo mortis, and that she knew of her condition; and if those two things are present, then you would have a right to consider it in evidence. While it is admitted, it is like any other evidence, you weigh it and pass upon it, giving it such weight as you see fit." This was a sufficient charge on the subject of dying declarations, and the failure to instruct the jury that dying declarations must be received with caution is not reversible error.

■ Upon the subject of the defendant's statement the court charged the jury as follows: "The defendant has made a voluntary

**334**

statement in his own behalf, not under oath. That statement you have a right to believe if you see fit. You have a right to believe it entirely, or reject it in part and believe it in part; you give this statement such force, weight, and effect as you think it entitled to have." This charge is excepted to upon the ground that the court failed to charge the jury that they might believe the statement in preference to the sworn testimony in the case, and that the jury were not instructed as to just what credence they could give to the statement. In charging upon the statement, the court should have instructed the jury that they might believe it in preference to the sworn testimony; but in view of the charge as given, the omission of such instructions is not cause for reversal; because the jury were told distinctly that they had a right to believe the statement in its entirety, or to reject it in part and believe it in part. That was tantamount to telling them that they might believe it in preference to the sworn testimony. This ruling is applicable to the assignment of error contained in ground 6 of the motion.

The rulings made in headnotes 5 to 9, inclusive, require no elaboration.

*Judgment affirmed. All the Justices concur, except* RUSSELL, C. J., who dissents from the rulings in divisions 3 and 4 of the decision.