29675. SATTERFIELD *v.* THE STATE.

8

George W. Westmoreland, for plaintiff in error.

Hope D. Stark, solicitor-general, contra.

Gardner, J. On an indictment charging murder the defendant was convicted of voluntary manslaughter. He filed a motion for new trial which was overruled and he excepted. The evidence in substance shows: Robert Satterfield, a white man, shot Tel Bonds, colored, with a shotgun fired at close range, while Bonds was in Satterfield's house for the purpose of getting some water for Mr. William Griffin who was Bonds' employer and who was also Satterfield's landlord. Bonds left the home of Griffin about six o'clock. It was some time before nine o'clock when Griffin heard Bonds call for help. Griffin testified in part as follows: "I got up and went to see what was the matter with him and he was laying out there. . . He said Satterfield had shot him and that his leg was broke. . . He said he was freezing to death. It was raining and cold. . . It was something like between twelve and one o'clock when the sheriff got there and he [Bonds] was gasping for breath then. They went into the house and arrested Robert and when they got back out there he [Bonds]' was dead." This witness testified that Bonds had no weapons on him; that on the morning of the day the killing took place Satterfield was drinking. The sheriff testified that Satterfield said that he shot the negro; that the loaded gun was found, but that the empty shell was not found.

1. The special ground complains that the court admitted certain testimony regarding a dying declaration. It will be noted from the evidence that the deceased was found wounded near the home of defendant, where he had gone several hours before the shooting. When the witness found the deceased a short distance from the house of defendant he had a talk with the deceased. The deceased, during the colloquy with the witness, stated that the defendant shot him and that he (deceased) was freezing to death. He died a short time thereafter. The evidence revealed that he was then suffering from a gun-shot wound and that the gun had

been fired at close range. The load penetrated along the hip, severed his intestines, and broke a leg within the hip region. Bleeding was profuse.

In order to submit a dying declaration to the jury it is only necessary for the State to submit facts which prima facie prove that the deceased was in the article of death at the time of the statement and that he was conscious of impending death. Code § 38-307 provides: "Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." See *Gibbs* v. *State*, 41 *Ga. App.* 574 (3) (153 S. E. 613): "A prima facie case is all that is necessary to carry dying declarations to the jury. When such a case has been made out the declarations are admitted, and the ultimate determination as to whether or not the person making them was in articulo mortis and realized that death was impending is for the jury." See *Jordan* v. *State*, 34 *Ga. App.* 222 (129 S. E. 7): "'A prima facie case is all that is necessary to carry dying declarations to the jury. It is an issue of fact whether or not they were made in the immediate prospect of death.' *Varnedoe* v. *State*, 75 *Ga.* 181 [58 Am. R. 465]." The *Varnedoe* case was cited in *Jones* v. *State*, 150 *Ga.* 775 (105 S. E. 495). See *Williams* v. *State*, 148 *Ga.* 483 (2) (97 S. E. 77). It was held in *Lyens* v. *State*, 133 *Ga.* 587 (3) (66 S. E. 792): "In the trial of a murder case, if at the time of making declarations the condition of the wounded party making them, the nature of his wounds, the length of time after making the declarations before he expired, and all the circumstances make a prima facie case that he was in the article of death and conscious of his condition when he made the declarations, such declarations should be admitted in evidence by the court, under proper instructions to the jury." See also *Johnson* v. *State*, 169 *Ga.* 814 (3-a) (152 S. E. 76): "Consciousness on the part of the deceased that he was dying and was in extremis may be inferred, not only from his statements, but also from the nature of the wound and other circumstances."

From the record in this case the court properly submitted the statement as a dying declaration to be considered by the jury along with the other evidence in the case.

2. While in a trial for murder the burden is on the State to

prove the homicide as alleged, it is a well and long established rule of evidence that in such a case when the State produces evidence sufficient to show that the defendant killed the deceased in the manner and in the county alleged in the indictment, a prima facie case is established unless the evidence produced by the State to prove such case within itself also shows justification or mitigation. Under all the circumstances as revealed by the record in the instant case the State made out a prima facie case. The defendant neither by his statement nor otherwise exonerated himself from the burden thus placed on him. See *Rickerson* v. *State,* 10 *Ga. App.* 464 (2) (73 S. E. 681): "When the State proves that the accused killed the person named in the indictment, in the county and in the manner therein described, a prima facie case of murder is made out. The evidence in the present case warranted an instruction to this effect." See also *Key* v. *State,* 177 *Ga.* 329 (170 S. E. 230). The circumstances of the killing were extremely gruesome. While the evidence for the State authorized a conviction of murder, portions of the defendant's statement to the jury authorized the verdict of voluntary manslaughter. It is "well settled that it is the prerogative of the jury to accept the defendant's statement as a whole, or to reject it as a whole, to believe it in part, or disbelieve it in part. In the exercise of this discretion they are unlimited." *May* v. *State,* 24 *Ga. App.* 379, 382 (100 S. E. 797). We find nothing in the record which would warrant a reversal.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

DECIDED SEPTEMBER 15, 1942.