## SMITHWICK *v.* THE STATE.

No. 15115. APRIL 3, 1945. REHEARING DENIED MAY 12, 1945.

294

*Aaron Kravitch,* for plaintiff in error.

*T. Grady Head, attorney-general, Samuel A. Cann, solicitor-general, Andrew J. Ryan Jr.,* and *Maud Saunders,* contra.

ATKINSON, Justice. (After stating the foregoing facts.) The first special ground of the motion for new trial alleges error in the court's refusal to allow the accused to produce evidence that the deceased had previously made assaults upon some other person, the objection by the State being to the effect that it was an effort to establish general bad character of the deceased for violence by proof of specific acts.

In a trial for murder, the general character of the deceased for turbulence and violence may be shown, where there is evidence tending to establish that at the time of the homicide he was making an assault, or was attempting to commit violence upon the accused, or was in some way the aggressor. But to establish prima facie that the deceased was the aggressor in order to lay the foundation for the introduction of such evidence, it is necessary to do so by

evidence other than the statement of the accused, as the foundation for the introduction of evidence to show the character of the deceased for violence and turbulence can not be laid by such statement. General bad character of the deceased for violence can not be established by proof of specific acts. Proof of specific acts is not admissible even after evidence of general bad character for violence has been produced, or after an issue of good or bad character for violence has developed, except, of course, upon cross-examination by the opposite party. While no previous decision has enunciated all of the rules above set forth, authority for the same is contained in the following cases and the citations therein: *Thornton* v. *State,* 107 *Ga.* 683 (3) (33 S. E. 673); *Andrews* v. *State,* 118 *Ga.* 1 (2) (43 S. E. 852); *Warrick* v. *State,* 125 *Ga.* 133 (6) (53 S. E. 1027); *Dotson* v. *State,* 136 *Ga.* 243 (17 S. E. 164); *Baldwin* v. *State,* 138 *Ga.* 349 (2) (75 S. E. 324); *Brooks* v. *State,* 150 *Ga.* 732 (3) (105 S. E. 362); *Jones* v. *State,* 154 *Ga.* 423 (4) (114 S. E. 326); *Chapman* v. *State,* 155 *Ga.* 393 (117 S. E. 321); *May* v. *State,* 185 *Ga.* 335 (3) (195 S. E. 196); *Mimbs* v. *State,* 189 *Ga.* 189, 192 (2) (5 S. E. 2d, 770). The evidence rejected by the court does not come within the rule stated, and there was no error in excluding it.

■ Under the second ground, error is assigned on the refusal to give the following requested charge: "Where a deadly weapon is used in a manner calculated to produce death, and death ensues, malice or intent to kill is presumed from the use of such weapon. Where the weapon is not one that in its ordinary use or in the manner that it was used at the time will ordinarily cause death, then in such case malice or intent to kill will not be presumed, and the burden would be upon the State to prove this fact beyond a reasonable doubt." It was not error to decline this request, for the reason that by its terms the presumption or non-presumption of malice would be determined by the nature of the weapon used, regardless of an intent to kill. "Legal malice is the intent unlawfully to take human life in cases where the law neither mitigates nor justifies the killing." *Tucker* v. *State,* 133 *Ga.* 470 (7) (66 S. E. 250). The rule is that a presumption of malice arises where the killing is shown to have been done unlawfully by the use of a weapon likely to produce death, and no circumstances of justification or mitigation appear; yet, where the killing is shown

to have been done unlawfully and intentionally without circumstances of justification or mitigation, though with a weapon not likely to produce death, the converse of the rule does not necessarily follow. In so far as the presumption of malice is concerned, there is no difference in respect to an intentional killing, whether it be done with a weapon likely to produce death or some other weapon. The distinction between deadly and non-deadly weapons becomes germane to the issue only as illustrating the intent to kill. Thus, when a person intentionally kills another unlawfully, without either justification or mitigation, malice is established, whether the killing be done with a weapon likely to produce death or in some other manner. To hold otherwise would be contrary to the well-established principle that, when the State produces evidence sufficient to establish that the defendant killed the deceased in the manner and in the county alleged in the indictment, it thereby establishes a prima facie case of murder, unless such evidence shows justification or mitigation. This principle has long been the law of this State. *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 1 L. R. A. (N. S.) 934) ; *Johnson* v. *State,* 152 *Ga.* 457 (110 S. E. 211) ; *Key* v. *State,* 177 *Ga.* 329 (5), (170 S. E. 230) ; *Satterfield* v. *State,* 68 *Ga. App.* 7 (2) (21 S. E. 2d, 861). There could be no prima facie case of murder without malice, and it should be observed that the foregoing principle is applicable, and malice is presumed, regardless of the weapon used, where the killing is shown to be intentional. It has been held that a presumption of malice arises even though the killing was not done with a weapon likely to produce death. *Marshall* v. *State,* 74 *Ga.* 26 (3).

■ The third ground alleges error in the refusal to give the following charge : "The limb of a tree is not regarded generally as a weapon likely to produce death. Whether it was used in such a manner and with the intent to kill, is a matter for the State to prove. If the State has failed to so prove, you could not convict the defendant of the offense of murder." It is not for the court to determine whether or not a limb of a tree is a weapon likely to produce death. This is a question for the jury. *Kelly* v. *State,* 145 *Ga.* 210, 213 (88 S. E. 822).

■ Under the fourth ground, error is assigned : (a) on the refusal to give the following requested charge, "The law of involuntary manslaughter in the commission of an unlawful act," it

being alleged that said charge was pertinent and applicable to the facts of the case; and (b) "in refusing and failing . . to charge along similar lines in the general charge, said failure being prejudicial and harmful to the defendant, although said charge was demanded by the evidence."

As to the written request, it is incomplete and inadequate to constitute a proper request. A written request to charge under the Code, § 81-1101, should be within itself in such form and phraseology as could be read by the judge as an understandable part of his instructions to the jury on the subject dealt with. But where, as here, the written request, if read to the jury, would be meaningless, unintelligible, or too indefinite to convey to them a principle of law, it is not error for the judge to decline to incorporate it as a part of the charge. *Summerour* v. *Pappa*, 119 *Ga.* 1 (3) (45 S. E. 713); *McElwaney* v: *MacDiarmid*, 131 *Ga.* 97 (6) (62 S. E. 20); *Wright* v. *Western & Atlantic R. Co.*, 139 *Ga.* 343 (3) (77 S. E. 161); 64 C. J. 858; 14 R. C. L. 800.

(a) As to the other assignment of error, based on the failure to charge (the law of involuntary manslaughter in the commission of an unlawful act), it is incomplete and too vague and indefinite to constitute a proper assignment. The Code, § 6-901, provides that exceptions "shall specify plainly the decision complained of and the alleged error," and this ground does not meet that requirement. It does not set forth the law of this grade of involuntary manslaughter. Such a general assignment of error does not present to the trial court, the adverse party, or to this court a clear-cut question for determination. For a similar case on this question, which contains many citations, see the majority opinion in *Pitts* v. *State*, 197 *Ga.* 317 (28 S. E. 2d, 864). While the writer dissented from the second division of the opinion in the *Pitts* case, the assignment of error there made was more complete and specific than the one here under review.

■ Under the fifth ground, error is assigned upon the failure of the court to give in charge certain additional instructions with the charge upon the subject of the presumption of malice where the homicide is established and no alleviation or justification is shown. The court charged fully on this subject, and there is no criticism of the charge given; but it is asserted that the court erred in not going further and charging, "That if the jury/found

that there was an unlawful killing without malice, taking into consideration all the facts and circumstances, and the weapons used, and the manner in which the same were used, they should then consider if this was a killing without intent to kill, and if they so found, to consider the question of involuntary manslaughter." Whether the suggested charge would have been a proper statement of the law need not be determined; suffice it to say that, if the accused desired a more detailed charge on the subject, a timely written request therefor should have been made.

■ Exception is taken under the sixth ground to the following portion of the charge: "A witness may be impeached by disproving the facts testified by him. . . He may be impeached by proof of contradictory statements previously made by him of matters relevant to his testimony and to the case." This is substantially in the language of the Code, §§ 38-1802 and 38-1803, and was not erroneous. Nor was there error in failing to give in charge § 38-1804 upon the subject of impeachment by proof of general bad character, there being no evidence seeking to impeach any witness by proof of general bad character. The court properly omitted to charge the law upon this ground of impeachment. *Southern Railway Co.* v. *O'Bryan,* 119 *Ga.* 147 (2) (45 S. E. 1000).

■ The seventh ground asserts error in the failure to give in charge the following written request: "That the court charge the jury on the law of mutual combat." The request does not indicate whether the accused desired a charge on the law of mutual combat as related to the law of voluntary manslaughter under the Code, § 26-1007, or the law of mutual combat as related to the law of justifiable homicide under § 26-1014. The court charged the law of mutual combat as related to voluntary manslaughter, to which there are no exceptions. In the brief filed by the attorney for the accused, no reference is made to mutual combat except as it relates to voluntary manslaughter. If the accused desired a more detailed or specific charge on this subject, or a charge on some other application of the law of mutual combat, such intention should have been more definitely manifested in the request to charge. A request to charge should itself be correct and, even perfect; otherwise the refusal to give it will not be cause for a new

trial. *Macon, Dublin & Savannah R. Co.* v. *Joyner,* 129 *Ga.* 683, 688 (5) (59 S. E. 902).

■ In ground 8, error is alleged in giving the following charge: "If you find . . that any admission was made by the defendant as to any fact or facts illustrative of his guilt or innocence, you may consider such admission in connection with and in the light of any other facts produced to your satisfaction, if any, bearing upon the guilt or innocence of the accused, and, from all the evidence, and considering the defendant's statement upon the trial, determine the guilt or innocence of the defendant; but I caution you that all admissions should be scanned with care and received with great caution." The movant avers in substance that the charge was erroneous because: (1) it stressed the fact that the accused made an admission; (2) it contained both the law of admissions and the law of confessions, as the words "received with great caution" are applicable only to the law of confessions; (3) the statement of the accused was in the nature of a confession, and had been admitted under preliminary proof required for confessions. There was no error for any reason assigned. The mere fact that the court charged the law of admissions, there being admissions in the evidence, could not be determined as stressing the fact that the accused made an admission. In charging upon the law of admissions, it was correct to say they should be "scanned with care," and incorrect to add that they should be "received with great caution;" yet such inaccuracy was favorable to the accused and affords no ground for complaint. See, in this connection, *Buckhanon* v. *State,* 151 *Ga.* 827 (6) (108 S. E. 209). Whether the written statement made by the accused was an admission or a confession need not here be determined. Granting that such statement, considered in its entirety, was a confession and not an admission, yet it incorporated many assertions, which, considered separately, were definitely incriminatory admissions. It is not cause for reversal for the court to charge the law of admissions where there is no error of law in the terms of the abstract instructions. *Martin* v. *State,* 24 *Ga. App.* 55 (99 S. E. 713). Every confession necessarily contains incriminatory admissions, and though a statement as a whole may amount to a confession, still it is within the province of the jury to disbelieve that part which would constitute it a confession, and believe only the portion

which amounted to incriminatory admissions. It has been held that it was not error in such a case to admit in evidence the statements of the accused, although they made out a case of justifiable homicide, as such statements were admissible to show the killing. *Brannon* v. *State,* 140 *Ga.* 787 (2 a) (80 S. E. 7). See also *Nelson* v. *State,* 187 *Ga.* 576 (4) (1 S. E. 2d, 641). On the other hand, if the statement of the accused amounted to a confession, the omission to charge the law of confessions, in the absence of a timely written request, is not error, where, as in the instant case, there is other sufficient evidence to authorize a conviction. *Allen* v. *State,* 187 *Ga.* 178 (3) (200 S. E. 109, 120 A. L. R. 495); *Mims* v. *State,* 188 *Ga.* 702 (3) (4 S. E. 2d, 831).

■ The ninth ground is novel but without merit. This ground alleges that during the trial the attorney for the accused requested the court to permit the accused to retire from the courtroom and dictate his statement to the court stenographer and then permit the statement to be read to the jury by his counsel. The reason assigned for this request was that the accused "was not in such a mental and physical condition as to enable him at said time to make a statement to the jury in the courtroom and during the stress of trial." No details as to the mental or physical condition of the accused were asserted. In refusing the motion, the court indicated that it would be considered if expert testimony was presented as to his mental or physical condition being such that he himself was unable to make a statement to the jury. No such testimony was presented. Under the Code, § 38-415, relating to the prisoner's statement, a person on trial has the right for his statement to be heard by the jury, and there are instances in which the only means of so doing would be through the voice of another, such as where a person is deaf and dumb, or is afflicted with some defect of speech, or unable to speak the English language; but rulings upon this privilege must necessarily be vested in the sound legal discretion of the trial judge, whose discretion will not be disturbed unless manifestly abused. In the instant case, there was no abuse of discretion on the part of the trial judge. The accused made a statement. The mere fact that he might have made a better and more impressive statement through the voice of another would not be sufficient grounds to demand this right.

The brief of counsel for th. accused requests this court to "review and modify" the rulings made by the Court of Appeals in *Bass* v. *State,* 4 *Ga. App.* 844 (62 S. E. 540), and in *Brown* v. *State,* 10 *Ga. App.* 50 (5) (72 S. E. 537). Each of these cases contains language to the effect that the statement must come from the voice of the accused. What is there said must necessarily yield to and be modified by the contrary ruling here made.

■ The tenth ground alleges error in that certain documents in the nature of admissions or confessions were taken to the jury room and considered by the jury. From the record, a witness appears to have testified that after the homicide the accused and Viola DeLoach, who was jointly indicted but separately tried, made and signed certain statements as to the circumstances of the homicide. These statements were read to the jury, were subsequently tendered in evidence, admitted without objection, and were taken to the jury room along with other real evidence and retained and considered by the jury during their deliberations. The exceptions in effect assert error in that it was prejudicial and harmful to the accused for these statements to have been in the possession of the jury during their deliberations, as it unduly emphasized the testimony which they contained for the jury to read and reread their contents.

The attorney for the accused insists both in his oral argument before this court and in his brief that this requires a new trial. It has been held that interrogatories, which have been read to the jury, can not be delivered to them and used in the jury room during their deliberations. *Shedden* v. *Stiles,* 121 *Ga.* 637 (4) (49 S. E. 719). It is insisted that written incriminatory admissions and confessions are in the nature of interrogatories, and permitting them to go out with the jury is controlled by the same principle. Where a written and signed dying declaration was introduced in evidence and permitted to go out with the jury, it was held to be reversible error. *Strickland* v. *State,* supra. In support of his position, counsel cites decisions of other States. Such decisions seem to be based on the idea that to permit the document containing the admission or confession to go out with the jury is harmful and prejudicial to the accused, for the reason that such testimony if read and reread by the jury would give it an undue emphasis, magnify the effect of its contents, and be the equivalent of permit-

ting a witness to repeat testimony in the jury room. However, the courts are not uniform on this subject, as there are contrary rulings from other States. See 23 C. J. S. 1035, § 1369 (3).

It has been held that a written confession may be introduced in evidence, *Lowe* v. *State,* 125 *Ga.* 55 (3) (53 S. E. 1038), though the exact question here presented was not there raised. Assuming that a written admission or confession would stand on the same basis as a written dying declaration, and that the ruling made in *Strickland* v. *State,* supra, applying to a written dying declaration would be controlling as to written admissions and confessions, yet there appears a clear distinction between the two cases. In the *Strickland* case, though the dying declaration was introduced in evidence, there was a timely and proper objection made to permitting the document to go out with the jury; while in the instant case the documents were admitted without objection, and there was no subsequent motion or objection made as to the jury considering these documents in their deliberations. In *Shedden* v. *Stiles,* supra, the interrogatories were sent to the jury room upon motion of the prevailing party and over the objection of the losing party. In none of the cases of other States which are cited by the attorney for the accused, is there any ruling that it was error to admit a written confession, where the document was introduced without objection and where no subsequent motion was made to exclude it from the jury. In the instant case, the documents having been introduced in evidence without objection, they were prima facie proper to be considered by the jury in their deliberations; and no objection or motion having been subsequently made in reference to prohibiting the documents from being considered by the jury during their deliberations, the court did not err in overruling the motion for new trial on this ground.

(a) Neither was there any violation of the rights of the accused under the due-process clause of the fourteenth amendment of the constitution of the United States (Code, § 1-815); nor under the clause of the State constitution providing for public and speedy trial by an impartial jury (§ 2-105); or for any other reason assigned.

■ The eleventh ground is covered under divisions 2 and 3 of this opinion. The twelfth ground, complaining of the failure of the court to charge on the law of conspiracy, is without merit,

as there was no evidence to authorize a charge on this subject. The thirteenth ground is covered under division 10 of this opinion. The fourteenth ground, alleging a failure to charge on seven distinct principles of law, and also asserting that three principles of law were incorrectly charged, but not being complete and understandable as to any subject mentioned, is not a proper assignment of error and presents no question for consideration by this court.

Whether the jury should have convicted the accused of voluntary manslaughter, or should more properly have recommended mercy in connection with their verdict of guilty, is not within the province of this court to determine, even though we should disagree with the jury's application of the facts. The Supreme Court is a court for the correction of errors of law, and where there is sufficient legal evidence to support a verdict, and it has received the approval of the trial judge, it is not within the power of this court to set aside the verdict.

*Judgment affirmed. All the Justices concur.*