### WEST *v.* THE STATE.

No. 15415. APRIL 2, 1946.

*A. M. Deal* and *W. G. Neville*, for plaintiff in error.

*Eugene Cook, Attorney-General, Fred T. Lanier, Solicitor-General, B. H. Ramsey,* and *C. E. Gregory Jr., Assistant Attorney-General,* contra.

ATKINSON, Justice. (After stating the foregoing facts.) ■ By the first special ground of the amended motion, error on the part of the trial court is alleged in not permitting the accused to cross-examine sheriff Deal as to what was said by the accused to him in a previous admission after the sheriff had testified as to an inculpatory admission made by the accused. For a complete understanding of the question presented, all the testimony of the sheriff · relating to the admissions follows.

Direct examination: "As to whether or not since he has been in jail he has made any statement as to who did the shooting, well, yes sir, he has. He said he did the shooting. He said he was standing in the door to the house at the time he shot. He said that, if Hendrix had taken one more step, he would have been on the porch. . . He said the double-barrel gun that was lying under the bed with the empty shell in it was the gun he used."

Cross-examination: "As to whether or not at the time I had the conversation with the defendant in the jail he also told me why he

shot Mr. Hendrix, well, yes sir, he told me why. As to whether or not that was in the same conversation in which he told me about having shot him, well, I would not swear that it was at exactly the same time I was talking to him then, or whether it was at another time when I was talking to him about some people, but he has told me why he did it."

Redirect examination: "As to whether or not at the time he told me he had shot Mr. Hendrix anything was said about why he shot him, well, no sir, I don't think so."

Recross-examination: "As to whether or not I can tell you when he did tell me why he shot him, well . . [Objection interposed.] After I went back up there that night . . [Objection interposed.] The first time he told me why he did was at his house while sitting on the porch." . . As to whether or not I did have a conversation with the defendant on the night of the killing and he told me why he did, well, yes sir. That was at the scene of the offense and before I brought him to town and put him in jail. As to why he said he shot him, well . . [Objection interposed.] At the time he told me where he was standing when he shot Mr. Hendrix in that conversation, he did not tell me why he did it. The other time he did tell me." . . Later on in the jail in a different conversation he did tell me why he did it, yes sir."

An analytical summary of the foregoing testimony discloses. three different conversations between sheriff Deal and the accused wherein admissions were made, which, taken in their chronological order, were as follows: The first conversation was at the scene of the crime before the accused was brought to jail, at which time, in discussing the homicide, he told the sheriff why he had killed the deceased. The second conversation took place in the jail, and on this occasion the accused related the position of the two men at the time of the homicide and identified the shotgun he used, but did not state why he had shot the deceased. The third statement was also made in the jail. No details of this conversation appear except that they were talking "about some people," but sheriff Deal said that at this time the accused also told him why he had shot the deceased.

The question here presented is whether, after the State has introduced an admission by the accused of a wilful and intentional killing without any negation of malice, the accused can, by cross-

examination, show another and previous conversation with the same witness in which the admission of the homicide was accompanied by an exculpatory explanation of justification, excuse, or mitigation.

"In a trial for murder, if the accused has admitted a wilful and intentional killing without any negation of malice, a presumption of malice will ordinarily arise; but this is not the case, and no presumption of malice arises, where he adds an exculpatory explanation of justification, excuse, or mitigation." *Myrick* v. *State,* 199 *Ga.* 244 (34 S. E. 2d, 36).

"When an admission shall be given in evidence, it shall be the right of the other party to have the whole admission and all the conversation connected therewith." Code, § 38-410. Where a part of a conversation, which amounts to an incriminatory admission, is admitted in evidence, it is the right of the accused to bring out other portions of the same conversation, even though it is self-serving in its nature, or exculpatory, in that it justifies, excuses, or mitigates the act. *Cox* v. *State,* 64 *Ga.* 374 (8) (37 Am. R. 76); *Betts* v. *State,* 66 *Ga.* 508 (5); *Boyd* v. *State,* 136 *Ga.* 340 (71 S. E. 416); *Richards* v. *State,* 152 *Ga.* 207 (4) (108 S. E. 800). It is the universal rule, in both civil and criminal cases, that, if part of a conversation is introduced, all that is said in the same conversation which is relevant to the issue should be admitted. 22 C. J. S. 1266, § 735; 20 Am. Jur. 425, § 488; 3 Enc. of Evidence, 348. And see annotations, 2 A. L. R. 1022; 26 A. L. R. 542; 118 A. L. R. 140.

There is authority in the foregoing also to the effect that, if an accused has made an incriminatory admission, and subsequently, after time for thought and deliberation, and in another conversation, makes an exculpatory statement, either in justification or mitigation, the statement should not be admitted in evidence, as under such circumstances it would then be denominated as a self-serving declaration.

In the instant case the accused, in the first conversation with sheriff Deal admitting the killing, stated why he had killed the deceased. In the second conversation with the sheriff, he related the positions of both parties at the time of the killing and identified the shotgun used, but did not reiterate as to why the killing occurred. The State had sheriff Deal to testify as to the second

conversation, which taken by itself was an incriminatory admission, would imply malice, and, together with the corpus delicti, establish a prima facie case of murder. *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934); *Johnson* v. *State*, 152 *Ga.* 457 (110 S. E. 211); *Key* v. *State*, 177 *Ga.* 329 (5) (170 S. E. 230); *Smithwick* v. *State*, 199 *Ga.* 292 (2) (34 S. E. 2d, 28); *Satterfield* v. *State*, 68 *Ga. App.* 7 (2) (21 S. E. 2d, 861).

The accused insists that, after sheriff Deal had testified as to the second conversation, it was error to deny him the right, under cross-examination, to have the sheriff further testify what the accused told him in the first conversation as to why he killed the deceased.

It seems clear that, where a part· of a conversation is introduced, other relevant statements made in the same conversation should be admitted, and also that, where an incriminatory admission is made, a statement made in a subsequent conversation which is exculpatory in its nature, should not be admitted; yet we find no instance where there has been an adjudication of the question here presented. If the accused, in the first statement, related as reasons why he killed the deceased circumstances of justification or mitigation, then it would seem contrary to the normal custom of conversations, for the accused, upon every occasion thereafter when discussing any circumstance of the killing with the same person, to reiterate the reasons already stated. To require the accused to repeat this part of his statement on every subsequent conversation with the same party, or else suffer the consequences of having the subsequent conversation used against him to establish a prima facie case, would be placing an unreasonable, unfair, and unjust burden upon him. After making the first statement in which the reasons for the killing are stated, it is but natural that, in a subsequent conversation with the same person and upon the same subject, what was said in the first statement, in the absence of something to the contrary, is necessarily understood, and must be taken and considered as a component part of the subsequent conversation.

Accordingly, we think that the trial court erred in not permitting the accused, as provided in the Code, § 38-1705, to cross-examine sheriff Deal and elicit statements which the accused made to him in the first conversation as to why the accused had killed the deceased.

■ The second special ground alleges error in the admission of certain evidence. In an effort to discredit the defendant's statement as to the distance between the two men at the time the shot was fired, the court permitted sheriff Deal to testify as to the result of experiments made by shooting the same barrel of the shotgun with the same kind of ammunition used, at various distances into cardboards, and to compare the pattern of the shot on the cardboards with the wound upon the deceased. The cardboards, the empty shells, and another loaded shell taken from the accused, but cut so as to show the construction of the load, were introduced in evidence. There was no error in admitting this evidence for any reason assigned. The admission of testimony as to experiments rests largely in the discretion of the trial judge, and the exercise of this discretion will not be controlled unless manifestly abused. The weight of such testimony is for the jury, and varies according to the circumstances of similarity which they may find to exist between the experiments and the actual occurrence under investigation. *Hicks* v. *State*, 146 *Ga.* 221 (2) (91 S. E. 57); *Bell* v. *State*, 164 *Ga.* 292 (3) (138 S. E. 238); *Wynes* v. *State*, 182 *Ga.* 434 (4) (185 S. E. 711).

■ No elaboration upon the 3rd headnote is necessary.

Inasmuch as another trial will be had, no ruling is made as to the sufficiency of the evidence.

*Judgment reversed. All the Justices concur.*