In the Supreme Court of Georgia

Decided: June 20, 2016

S16A0166.  ALLABEN v. THE STATE.

HUNSTEIN, Justice.

On retrial following a reversal of his original convictions, see Allaben v. State, 294 Ga. 315 (751 SE2d 802) (2013) ("Allaben I"),[1]  Appellant Dennis Allaben was convicted of malice murder in connection with the strangling death of his wife, Maureen, and he now appeals his conviction on numerous grounds. Though we conclude that the evidence was sufficient to sustain his conviction, we agree with Appellant that the trial court failed to properly apply the rule of completeness and erroneously denied Appellant's request to instruct the jury on certain lesser-included offenses.  Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.[2]

---

[1] Allaben I was later overruled in part by State v. Springer, 297 Ga. 376 (774 SE2d 106) (2015).

[2] In May 2014, a DeKalb County grand jury indicted Appellant for malice murder and felony murder predicated on aggravated assault in connection with the strangling death of his wife.  Following a week-long trial in August 2014, a jury returned guilty verdicts on both counts, and the trial court sentenced Appellant to life

Viewed in a light most favorable to the jury's verdict, the evidence at trial established as follows. In January 2010, Appellant killed his wife. Thereafter, he wrapped her body in a packing blanket and placed it in the bed of his pickup truck; he then used that truck to transport his children to Virginia, the home state of his brother and sister-in-law. During the trip, Appellant admitted to his children and later his sister-in-law that he had killed his wife. According to Appellant's sister-in-law, Appellant admitted that "he had a cloth with ether on it, [which] he put [] over [the victim's] mouth, and the cloth went too far down her throat and choked [her]." The sister-in-law further testified that Appellant stated that he used the ether "so [the victim] could go to sleep" because he just "wanted to talk to her." After dropping off his children in Virginia, Appellant returned to Georgia and proceeded to the home of Jon Kevin Crane. Once there, Appellant stated that he needed an attorney, admitted that his wife was dead in the bed of his truck, and, eventually, surrendered to authorities. The victim's

imprisonment for malice murder; the felony murder verdict was vacated by operation of law. Appellant filed a motion for new trial on September 16, 2014, which he amended on March 26, 2015. Following two hearings, Appellant's motion was denied on July 16, 2015, and he filed his notice of appeal on August 13, 2015. This appeal was docketed to the January 2016 term of this Court, and oral argument was heard on January 4, 2016.

body, clothed only in a t-shirt and underwear, was found frozen in the bed of Appellant's truck.

An autopsy revealed that the victim was legally intoxicated, that she had a higher-than-therapeutic level of Benadryl in her system at the time of death, and that ether, an anesthetic, was also found in her system. According to the medical examiner, the victim's chin and neck area evidenced signs of injury, and the victim's face showed innumerable petechial hemorrhages, indicating that the blood flow from the head was interrupted. There was no evidence that she had choked on a foreign object, such as a rag. Further, though the victim bore obvious signs of strangulation, the medical examiner testified that there were no signs of a struggle – i.e., none of the victim's nails were broken, she had no scratches on her throat, and she had no skin under her nails. Based on the foregoing, the medical examiner opined that the victim was possibly incapacitated prior to her death.

The medical examiner concluded that the victim was strangled to death using a "carotid sleeper hold." While the precise medical basis for the victim's death could have been caused by either jugular vein occlusion or the over stimulation of baroreceptors in the carotid artery – or some combination thereof

3

– the medical examiner testified that the exact mechanism of the victim's death was immaterial to his conclusion that she was strangled. He also agreed that death is an expected consequence of strangulation.

1. Appellant contends that the evidence presented at trial was insufficient to support his conviction. Relying on testimony from the medical examiner that a sleeper hold, generally speaking, is unlikely to cause death, Appellant argues that the State failed to exclude all reasonable hypotheses except that of his guilt, namely, that he used the sleeper hold only to subdue the victim and did not intend to kill her. This argument is without merit.

As an initial matter, appellate court decisions in this State suggest that the prosecution is only required to exclude all reasonable hypotheses except that of guilt where its case is based exclusively on circumstantial evidence. See Daniels v. State, 298 Ga. 120, 122 (1) (779 SE2d 640) (2015)("[P]ursuant to both former OCGA § 24-4-6 . . . and current OCGA § 24-14-6, in order to convict Daniels based solely upon circumstantial evidence, the facts proven at trial had to be consistent with the hypothesis of his guilt and exclude every other reasonable

4

hypothesis.").[3] See also Saine v. State, 170 Ga. App. 610, 611 (1) (317 SE2d 650) (1984) ("[T]he strictures of [former OCGA] § 24-4-6 are applicable only when the State's case consists solely of circumstantial evidence."). Here there was significant direct evidence, including defendant's numerous admissions, that he killed his wife. See Stubbs v. State, 265 Ga. 883, 885 (2) (463 SE2d 686) (1995) ("Direct evidence is that which is consistent with *either* the proposed conclusion *or* its opposite; circumstantial evidence is that which is consistent with *both* the proposed conclusion and its opposite.") (emphasis in original). To the extent that OCGA § 24-14-6 applies,

> questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

Robbins v. State, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998).

While the jury heard testimony from the medical examiner that a sleeper hold does not usually result in death, the medical examiner was unequivocal that

---

[3] Appellant was tried after the effective date of Georgia's new evidence code, and, thus, OCGA § 24-14-6 applies here.

the use of a sleeper hold on an individual may – and in this case did – result in death. The mere fact that the jury heard testimony that a sleeper hold does not *usually* result in death did not prevent the jury from concluding that Appellant utilized this maneuver with intent to effectuate his wife's death. Moreover, the jury heard evidence that the victim: was only partially clothed; showed no signs of having defended herself; and was affected by substances that could have rendered her incapacitated prior to her death. The jury also heard testimony that Appellant utilized a sleeper hold long enough to kill the victim and leave innumerable hemorrhages on her face.

Accordingly, the evidence was sufficient to enable a rational trier of fact to find Appellant guilty beyond a reasonable doubt of malice murder. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

2. During the State's case-in-chief, Crane testified on direct examination concerning various portions of his extensive post-incident conversation with Appellant. Namely, Crane testified that Appellant unexpectedly arrived at his house in the early morning hours of January 5, 2010, and claimed to need an attorney because he had his dead wife in the bed of his truck. During cross-examination, however, the trial court prohibited the defense from eliciting

6

testimony from Crane that, during this lengthy conversation, Appellant stated that his wife had been unfaithful and "that he didn't mean for [her death] to happen, that he loved her so much and [her death] was not what he wanted." Appellant argues on appeal, as he did below, that this testimony was admissible under the rule of completeness. We agree.

"When an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence." OCGA § 24-8-822. This "rule of completeness" is a "universal rule, [applicable] in both civil and criminal cases, that, if part of a conversation is introduced, all that is said in the same conversation which is relevant to the issue should be admitted." West v. State, 200 Ga. 566, 569 (1) (37 SE2d 799) (1946).[4] With respect to criminal cases,

> [w]here a part of a conversation, which amounts to an incriminatory admission, is admitted in evidence, it is the right of the accused to bring out other portions of the same conversation, even though it is

---

[4] Because Appellant's trial was held after January 1, 2013, Georgia's new Evidence Code is applicable. See Ga. L. 2011, p. 99 § 1. We note, however, that the "rule of completeness" was carried forward into the new evidence code without change, id. at p. 133 § 2, and our decisions interpreting that provision remain good law. See Bradshaw v. State, 296 Ga. 650 (2) (769 SE2d 892) (2015).

7

self-serving in its nature, or exculpatory, in that it justifies, excuses, or mitigates the act.

Id. at 569. However, OCGA § 24-8-822 "does not make admissible parts of a statement that are irrelevant to the case and to the parts of the statement introduced into evidence by the opposing party." Westbrook v. State, 291 Ga. 60, 62 (2) (727 SE2d 473) (2012). We review the trial court's ruling here for abuse of discretion. See Phillips v. State, 289 Ga. App. 281 (2) (656 SE2d 905) (2008).

The trial court concluded that the excluded portion of Crane's conversation with Appellant "was not necessary to explain" Crane's testimony on direct examination. This conclusion is problematic for two reasons. First, the trial court's ruling was based largely on the narrow testimony elicited by the State on direct examination, rather than the substance of Crane's entire conversation with Appellant.[5] Second, the State's examination of Crane was not particularly narrow; in fact, the State broadly asked Crane whether "Appellant

---

[5] Under this reasoning, a party could always avoid the application of OCGA § 24-8-822 by crafting its questioning in such a way as to elicit only certain favorable portions of a conversation and then argue that other portions are not relevant to the witness's narrowly focused testimony.

sa[id] *anything* about Maureen, his wife," and questioned Crane at length about his conversation with Appellant.

The defense's proffer of Crane's expected testimony demonstrates that the remainder of the conversation between the two men was, in fact, relevant to both Crane's direct testimony and the charges for which Appellant was on trial. Specifically, it explained both the impetus for Appellant's actions towards his wife as well as his intent at the time of the incident. See OCGA § 24-4-401 ("[T]he term 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Indeed, Appellant's intent with respect to the use of the ether and sleeper hold – whether he intended to kill his wife or merely subdue her – was the central, and perhaps only disputed issue at trial, and evidence on that point was sparse. Further, the excluded portion of Crane's testimony supported Appellant's defense that the victim's death was unintentional. In light of the significant question of intent here, the exclusion of this testimony was not harmless though it represented only a small portion of Crane's testimony. Accordingly, the trial court abused its discretion when it excluded Crane's testimony, and this ruling

constitutes reversible error.[6]

3. Though we have reversed Appellant's murder conviction, there are a number of remaining enumerations of error that are likely to occur on retrial; therefore, we will address them.

(a) Appellant contends that the trial court erred by refusing to instruct the jury on simple battery, see OCGA § 16-5-23 (a), and reckless conduct, see § 16-5-60 (b), as lesser-included offenses of malice murder. We agree.

"A written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." (Citation and punctuation omitted). Rogers v. State, 289 Ga. 675, 677 (2) (715 SE2d 68) (2011). The crime of simple battery is accomplished when an individual "[i]ntentionally makes physical contact of an insulting or provoking nature with the person of another" or "[i]ntentionally causes physical harm to another." OCGA § 16-5-23 (a). With respect to the offense of reckless

---

[6] With the reversal of Appellant's malice murder conviction, the felony murder count is no longer vacated by operation of law. However, because the felony murder count here was premised on aggravated assault with *intent to injure*, see Guyse v. State, 286 Ga. 574 (2) (690 SE2d 406) (2010), that verdict must also be reversed due to the excluded testimony.

conduct,

> [a] person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

OCGA § 16-5-60 (b). Here, the medical examiner testified that the purpose of a sleeper hold is to subdue an individual, yet the risk of death associated with it is significant enough that many police jurisdictions around the nation have prohibited such a maneuver. The jury also heard evidence that, in addition to her death, the victim was left with bruises and hemorrhages on her neck and face. We find this evidence to be sufficient to warrant instructions on both simple battery and reckless conduct as lesser-included offenses of malice murder.

(b) Appellant also contends that the trial court erred in failing to instruct the jury on simple assault, see OCGA § 16-5-20, and reckless conduct as lesser-included offenses of felony murder. For the reasons discussed above, we agree that the jury should have been instructed on reckless conduct as a lesser-included offense of felony murder. See Reinhardt v. State, 263 Ga. 113, 113-

114 (2) (428 SE2d 333) (1993), overruled on other grounds, Vergara v. State, 283 Ga. 175, 177 (657 SE2d 863) (2008). We also agree that Appellant was entitled to an instruction on simple assault.

Simple assault is accomplished when an individual "attempts to commit a violent injury to the person of another" or "commits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (1) and (2). The evidence at trial showed that Appellant utilized the sleeper hold to either subdue or kill his wife; either way, there was evidence authorizing the jury to consider whether Appellant "attempted to commit a violent injury" on his wife or placed her "in reasonable apprehension of immediately receiving a violent injury." Accordingly, Appellant was entitled to an instruction on OCGA § 16-5-20 (a) (1) and (2).

(c) Appellant also contends that the trial court erred when it refused to instruct the jury on involuntary manslaughter on the grounds that he was previously acquitted of that offense in his first trial. We agree.

"No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial." Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII. See also

12

Williams v. State, 288 Ga. 7, 8 (2) (700 SE2d 564) (2010) ("[A] conviction or verdict of acquittal is an absolute bar to a subsequent prosecution for the same offense."). Double jeopardy protections, however, may be waived. See United States v. Williams, 527 F3d 1235 (II) (A) (11th Cir. 2008). See also Hooks v. State, 138 Ga. App. 539, 539 (3) (226 SE2d 765) (1976) ("A plea of former jeopardy is a personal privilege and may be waived.") Here, Appellant affirmatively waived his right to claim former jeopardy and, thus, the trial court erred when it concluded that double jeopardy barred involuntary manslaughter as a lesser-included offense in Appellant's second trial. Further, the evidence as discussed above was sufficient to authorize the jury to consider involuntary manslaughter as a lesser-included offense. See OCGA § 16-5-3 (a) and (b).

(d) Appellant asserts that the trial court erred in failing to instruct the jury on a definition of the term "abandoned and malignant heart." See OCGA § 16-5-1 (b). Specifically, Appellant requested the following charge:

> Malice can be implied from reckless disregard for human life. To imply the malice element of malice murder, you must find extremely negligent conduct, which creates what a reasonable man would realize to be not only an unjustifiable but also a very high degree of risk of death or serious bodily injury to another.

We find no error.

13

"In reviewing a challenge to the trial court's jury instruction, we view the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case." (Citations omitted.) Shivers v. State, 286 Ga. 422, 423 (2) (688 SE2d 622) (2010). "A trial court's refusal to give a jury charge in the exact language requested by a defendant is not error if the charge given by the trial court substantially covers the applicable principles of law." Keita v. State, 285 Ga. 767, 771 (4) (684 SE2d 233) (2009). While the trial court did not use Appellant's requested instruction, the court did instruct the jury on murder, malice, and motive using the pattern instructions, which substantially addressed the same legal principle. We have previously recognized that these pattern instructions – which do not include a definition of the phrase "abandoned and malignant heart" – accurately state the law. See Dukes v. State, 290 Ga. 486 (2) (722 SE2d 701) (2012). Accordingly, the trial court did not err when it refused to give the requested instruction.[7]

(e) Appellant faults the trial court for failing to instruct the jury on a definition of the word "likely" as used in OCGA § 16-5-21 (b) (2). We

---

[7] We do not address Appellant's claim regarding the jury's subsequent question, because such a question may not be posed on retrial.

14

disagree. "A 'trial court is not required to instruct on the meaning of all words used in the charge, particularly words of common understanding.'" (Citations omitted.) McKibbens v. State, 293 Ga. 843, 854 (7) (750 SE2d 314) (2013). We agree with the trial court that "likely" is a word of common understanding, and, thus, the trial court was not required to define the word for the jury.

(f) Finally, Appellant contends that the trial court erroneously admitted two post-incision autopsy photos even though the medical examiner stated that either photo would "sufficiently" explain the victim's injury. This argument is without merit.

While the medical examiner stated that either photo would be "sufficient" to explain the victim's injuries to the jury, he also explained that the two photos provided different perspectives of the injury. As the medical examiner testified at trial, one photo provided an "overview" of the anatomical structure at issue, while the other, which is a close up, details injuries discovered during the autopsy. The medical examiner utilized both photos to discuss the nature of the victim's injuries, which were the subject of intense and lengthy questioning by both parties. Consequently, the photos were relevant under OCGA § 24-4-401, and were not more prejudicial than probative. See OCGA § 24-4-403.

15

Accordingly, trial court's decision to admit both photos was sound. See Dailey v. State, 297 Ga. 442, 444 (774 SE2d 672) (2015) (affirming the admission of autopsy photos over a OCGA § 24-4-403 objection, explaining that such photos are relevant when used by the medical examiner to show internal injuries that caused the victim's death, even if the defendant did not dispute the cause of death).

For the foregoing reasons, Appellant's conviction for malice murder is reversed, and this case is remanded for proceedings consistent with this opinion.

Judgment reversed and case remanded. All the Justices concur.