S09A1800. ALLEN v. THE STATE.
(687 SE2d 799)

BENHAM, Justice.

Appellant Eugene Markeith Allen was convicted of and sentenced for the felony murder of Raheem Wilson (with aggravated assault of Wilson serving as the predicate felony), the aggravated assaults of Brandon Smalls and Daniel Johnson, and three counts of

---

possession of a firearm during the commission of a crime.[1] On appeal, Allen maintains he was not afforded effective assistance of counsel and challenges the sufficiency of the evidence and several evidentiary rulings. Finding no error that would authorize reversal of any of the convictions, we affirm.

1. Raheem Wilson died as a result of a gunshot wound to his head. He suffered his fatal injury as he sat on outdoor steps in a Savannah apartment complex. Daniel Johnson, one of Wilson's companions and a victim of one of the aggravated assaults, was shot in the hand and right buttock, while Brandon Smalls, another companion and the victim of the other aggravated assault, was not injured. One of the victim's companions chased the shooter as he ran away, and fired several shots at him. A witness identified appellant as the person he saw come around the side of a building, shooting and running. A friend of appellant testified that he and appellant were driving in the complex together the day of the shooting; appellant got out of the car and talked to the victim; and appellant returned to the car where he told the friend the victim had robbed him. The friend also testified that appellant was bleeding when he arrived at the friend's apartment the evening of the shooting, and appellant told him "they" had tried to kill him. Another friend testified appellant had told him the day of the shooting that the victim had robbed him by taking two ounces of crack cocaine from appellant to sell and not giving appellant the proceeds from the sale. After the shooting, appellant told the other friend he had seen the victim sitting on the steps while appellant was driving through the apartment complex; appellant had gotten out of the car and snuck around a corner of a building where he donned a black cap, and ran toward the victim while he repeatedly fired his gun. According to the witness, appellant told him that one of the victim's companions shot appellant as appellant ran off. The victim's mother testified appellant had visited her several times the afternoon of the shooting, looking for the victim, and appellant had told her the victim had robbed him. The

---

[1] The crimes were committed on May 26, 2004. A true bill of indictment charging appellant was returned by a Chatham County grand jury on July 28, 2005. Appellant's trial commenced on May 22, 2006, and concluded on May 25 with the jury's return of its guilty verdicts. On June 13, 2006, the trial court entered appellant's sentences: life imprisonment for felony murder, a concurrent 20-year sentence for one aggravated assault and a consecutive 20-year sentence for the other aggravated assault, and three consecutive five-year sentences for the convictions for firearm possession which are to be served consecutively to the concurrent 20-year aggravated assault sentence. Appellant's motion for new trial, filed June 13, 2006, and amended May 11, 2007, was the subject of a hearing held on December 3, 2007, and January 14, 2008. The order denying the amended motion was filed May 21, 2008. Pursuant to the notice of appeal filed on June 18, 2008, the appeal was docketed in this Court on July 15, 2009, and submitted for decision without oral argument.

mother of appellant's children testified that, the night of the shooting, appellant came to her apartment in the same complex where the shooting took place, breathing heavily and wearing a shirt with bullet holes in it.

The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In the May 2006 trial, appellant sought to impeach a witness pursuant to OCGA § 24-9-84.1 with certified copies of the witness's prior convictions for robbery in 1992 and burglary in March 1996. In 1992, the witness had been sentenced to serve five years for robbery convictions. He was released from incarceration in 1994 after having served two years, with the remaining time to be served on probation. For the March 1996 burglary conviction, the witness had been sentenced to the time he had served awaiting trial (206 days) and a period of probation which continued into 1997.

OCGA § 24-9-84.1 (a) (1), (3) provides that a witness may be impeached with a prior felony conviction upon the trial court finding the probative value of the evidence to outweigh its prejudicial effect to the witness, or with a conviction for a crime involving dishonesty or making a false statement regardless of whether it was a felony or misdemeanor. However, such evidence is not admissible if

> more than ten years has elapsed since the date of the conviction or the release of the witness . . . from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect[,]

and the proponent has given the adverse party sufficient advance written notice of the intent to use such evidence so that the adverse party has a fair opportunity to contest the use of such evidence. OCGA § 24-9-84.1 (b).

The trial court refused to allow appellant to use the 1992 and 1996 convictions after finding that they were untimely under the statute and that appellant had not presented specific facts and circumstances showing the probative value of the convictions substantially outweighed their prejudicial effect. Appellant contends the statute authorizes use of the convictions because probation qualifies as "confinement" for purposes of the statute and the witness was on probation for the 1992 and 1996 convictions within the ten-year

period preceding the 2006 trial at which his impeachment was sought.

OCGA § 24-9-84.1 is a fairly new rule of evidence used in Georgia state courts, applicable only to trials which commenced on or after July 1, 2005. Ga. L. 2005, p. 20, § 16. It does not define "confinement" and the Georgia appellate courts have not had the opportunity to construe that portion of the statute. However, Georgia's sentencing statute does not use "confinement" in describing sentencing options available to a trial judge; rather, it distinguishes between a sentence of imprisonment or period of incarceration (OCGA § 17-10-1 (a) (4), (a) (6) (A)) and the imposition of a probated or suspended sentence. OCGA § 17-10-1 (a) (1), (a) (5) (A).[2] The legislature limited the period of probation or suspension of a sentence to "the maximum sentence of confinement which could be imposed on the defendant" in OCGA § 42-8-34 (c), thereby distinguishing a probated or suspended sentence from a sentence of confinement. Parole also has been distinguished from "confinement" by the General Assembly in that parole is a form of "release from sentence" granted by the State Board of Pardons and Paroles rather than a sentencing option that can be exercised by a trial judge. OCGA §§ 42-9-3, 42-9-42 (a).

Because the language of OCGA § 24-9-84.1 (b) mirrors that of Rule 609 (b) of the Federal Rules of Evidence and the statutes based on Rule 609 (b) that have been enacted by several other states, we look for guidance to the judicial decisions of the federal courts construing Rule 609 (b) and the courts of our sister states construing their statutes modeled on Rule 609 (b). See *Independent Ins. Agents of Ga. v. Dept. of Banking &c.*, 248 Ga. 787, 788-789 (285 SE2d 535) (1982); *Brumby v. Brooks*, 234 Ga. 376, 380 (216 SE2d 288) (1975). See also *Hinton v. State*, 280 Ga. 811 (7) (631 SE2d 365) (2006). The United States Court of Appeals for the Seventh Circuit has held that probation does not constitute "confinement" within the meaning of Rule 609 (b). *United States v. Rogers*, 542 F3d 197, 200 (7th Cir. 2008). The appellate court held that "Rule 609 (b) unambiguously starts the clock at the date of conviction or release from 'confinement,' without any mention of periods of probation or parole" and noted that while the Rule's initial draft provided that the ten-year time span ran from "the date of the release of the witness from confinement imposed for his most recent conviction, or the expira-

---

[2] The undefined term of "probated confinement" is used in OCGA § 17-10-1 (g) (1) (A). It is also used in four opinions issued by the Court of Appeals to refer to a sentence of probation. See *Tenney v. State*, 194 Ga. App. 820 (3) (392 SE2d 294) (1990); *Bragg v. State*, 172 Ga. App. 133 (322 SE2d 337) (1984); *White v. Taylor*, 157 Ga. App. 328 (277 SE2d 321) (1981); and *Jones v. State*, 153 Ga. App. 411 (265 SE2d 334) (1980).

tion of the period of his parole, probation, or sentence granted or imposed" (id. at 200), the language referring to parole and probation was deleted in 1971. Thus, the text of the amended rule adopted in 2005 by the Georgia General Assembly does not support appellant's interpretation that the ten-year time limitation begins at the end of probation. See *Wilson v. Sico*, 713 A2d 923 (Del. 1998). See also *United States v. Lorenzo*, 43 F3d 1303, 1307-1308 (9th Cir. 1995), and *United States v. Lopez*, 979 F2d 1024 (2) (a) (5th Cir. 1992) (where prior conviction resulted in probation without confinement, the ten-year period begins on the date of conviction); *Bizmark v. Kroger Co.*, 994 FSupp. 726, 728 (W.D. Va. 1998) (probation does not constitute "confinement" because confinement means actual imprisonment). The courts of states which have enacted statutes modeled on Rule 609 (b) have followed the lead of the federal courts and have held that "confinement" does not include that portion of a sentence served while on probation or parole. See, e.g., *Lee v. State*, 2 P3d 517, 526 (Wyo. 2000) (parole does not qualify as confinement); *Wilson v. Sico*, supra, 713 A2d 923; *State v. Ihnot*, 575 NW2d 581, 585, n. 2 (Minn. 1998); *Commonwealth v. Treadwell*, 911 A2d 987, 990 (Pa. Super. 2006) (probation and confinement are alternatives for sentencing purposes); *State v. Dunlap*, 187 Ariz. 441 (930 P2d, 518, 538) (Ariz. App. 1996).

The legislature's distinction of "confinement" from release on parole and suspended and probated sentences, when coupled with the construction of identical statutory language by the federal courts and our sister states, leads us to conclude that probation does not qualify as confinement under OCGA § 24-9-84.1 (b). Accordingly, the trial court did not err when it declined to permit defense counsel to use the prior convictions at issue after determining that more than ten years had elapsed since the witness was released from the confinement resulting from the convictions, and that defense counsel had not provided specific facts and circumstances demonstrating that the probative value of the convictions outweighed their prejudicial effect.

3. Appellant next contends the trial court abused its discretion when it permitted the assistant district attorney to ask a witness during re-direct a question that addressed a concern voiced by a juror at the conclusion of appellant's cross-examination of the witness.[3] While jurors in Georgia courts may not ask questions of witnesses

---

[3] The trial transcript contains the following:
[Defense Counsel]: No further question.
JUROR: Your Honor?
THE COURT: Yes, sir.
JUROR: I'm somewhat confused about the position of the additional shell casings.

directly, a trial court may receive written questions from the jury and ask those questions which the court finds proper, or allow counsel for either party to ask a testifying witness the questions found to be proper. *Matchett v. State*, 257 Ga. 785 (2) (364 SE2d 565) (1988) ("The trial court properly instructed the jury as to the appropriate form of asking questions" which was "to submit any questions they might wish to have answered to the trial court in writing at the conclusion of the witness'[s] testimony"); *Story v. State*, 157 Ga. App. 490 (278 SE2d 97) (1981) ("Upon approval by the court, the question may be asked of the witness by the judge or, if counsel so desires, the question may be asked by counsel for either party.").[4] The trial court did not abuse its discretion in following this procedure.

4. Appellant maintains the trial court erroneously denied the motion for mistrial counsel made during the playing of an audiotape of a detective's interview of a witness. The audiotape was used to impeach the witness's trial testimony. During the audiotaped interview, the detective told the witness the detective was aware the deceased victim had stolen drugs from appellant, and then stated, "They were honest about that." At trial, appellant took issue with the detective's statement that the detective knew the victim had stolen drugs from appellant, and sought a mistrial on the ground that it was prejudicial for the detective "making statements."[5] On appeal, appellant focuses on the detective's comment about honesty and contends that the detective invaded the province of the jury and

---

THE COURT: Hold on. I need you to write something down for me, okay? And then hand it up here.

After this exchange, a short bench conference took place, followed by the removal of the jury from the courtroom and a five-page discussion concerning the situation.

[4] This procedure calls into question the reports in legal journals and case law that Georgia does not permit questioning of witnesses by jurors. See *Medina v. People*, 114 P3d 845, 852, n. 12 (Colo. 2005) (naming Georgia as one of "a handful of state courts [that] have decided to prohibit the practice of allowing jurors to ask questions altogether"); *State v. Costello*, 646 NW2d 204, 209 (Minn. 2002) (listing Georgia as one of four states that "have prohibited the practice [of juror questioning] completely in criminal trials"); *State v. Culkin*, 97 Hawai'i 206, 227 (35 P3d 233) (Hawai'i 2001) (listing Georgia as one of "a few states [that] have rejected the practice of juror questioning"); *Landt v. State*, 87 P3d 73, 77, n. 7 (Alaska App. 2004) (listing Georgia as one of several states that "have rejected the practice [of allowing jurors to question witnesses]"); Nicole Mott, *The Current Debate on Juror Questions: "To Ask or Not To Ask, That is the Question"* 78 Chi-Kent L. Rev. 1099, 1100 (2003) (listing Georgia as one of three states which bar the practice of juror questioning in criminal cases); Jeffrey Berkowitz, *Breaking the Silence: Should Jurors Be Allowed to Question Witnesses During Trial?* 44 Vand. L. Rev. 117, 128 (1991) ("On the state court level, only Georgia has concluded that it is inappropriate for jury members to ask questions under any circumstances.").

[5] At trial, defense counsel stated:

Your honor . . . here's the detective making statements here. It's not this witness testifying to the statement that [the victim] ripped [the defendant] off about some dope. He's making it – a very strong voice. I understand that some witness [has] made [the] statement, but coming from the detective, it's clearly prejudicial in this

impermissibly bolstered the credibility of other witnesses — the "they" to whom the detective was referring. " 'In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground.' [Cit.]" *Sanchez v. State*, 285 Ga. 749 (3) (684 SE2d 251) (2009). Since appellant did not raise at trial the contention that the detective's audiotaped statements improperly bolstered the credibility of unnamed witnesses, appellant waived the ability to raise the issue on appeal. Id.

5. Appellant asserts he was denied his constitutional right to the effective assistance of counsel when trial counsel failed to impeach a witness with evidence of charges then pending against the witness, and when counsel failed to raise a constitutional "vagueness" challenge to OCGA § 24-9-84.1. In order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that counsel performed deficiently and that the deficient performance prejudiced the defendant such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. *Pruitt v. State*, 282 Ga. 30 (4) (644 SE2d 837) (2007). Since appellant must show both deficient performance and actual prejudice stemming from the deficient performance, an insufficient showing on either prong relieves the reviewing court of the need to address the other prong. *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004).

(a) Even if we assume the witness was facing criminal charges when he testified and trial counsel performed deficiently in failing to cross-examine the witness with regard to those purported pending charges,[6] the trial court did not err in finding that ineffective assistance of counsel had not been proven since appellant failed to establish that the outcome of his trial would have been different had the witness been impeached in this manner. Had trial counsel used the purported pending charges to impeach the witness and had the jury decided to disregard entirely the testimony of that witness due to the impeachment, there remained eyewitness identification of appellant as the shooter, evidence that appellant had been looking for the victim and believed the victim had robbed him, and evidence that appellant had been shot. In light of the evidence, appellant was not

---

case. This is an officer of this Court and for that reason, I think the jury will believe anything else anyone say[s] about that. For that reason, I'm going to ask for a mistrial.

[6] A criminal defendant has a right to cross-examine a key state's witness concerning pending criminal charges against the witness. *Davis v. Alaska*, 415 U. S. 308, 315-317 (94 SC 1105, 39 LE2d 347) (1974); *Hines v. State*, 249 Ga. 257 (2) (290 SE2d 911) (1982).

able to establish there is a reasonable probability that, but for the alleged deficient performance of trial counsel, the outcome of appellant's trial would have been different. Accordingly, the trial court did not err when it did not find ineffective assistance of counsel.

(b) Appellant contends on appeal that trial counsel was ineffective when he failed to challenge OCGA § 24-9-84.1 (b) as unconstitutionally vague because it does not contain a definition of "confinement." Appellant did not raise this purported deficient performance at the hearing on the amended motion for new trial; rather, appellant argued trial counsel was ineffective for having failed to challenge the statute as an unconstitutional limitation on a defendant's right to confront and cross-examine a witness.[7] Because appellant's allegation of ineffective assistance based on unconstitutional vagueness was not raised on motion for new trial by appellate counsel who had been appointed following appellant's conviction, it is waived. *Lynch v. State*, 280 Ga. 887 (3) (635 SE2d 140) (2006).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 25, 2010.

*Emory B. Bazemore, Richard M. Darden*, for appellant.
*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.

---

[7] The allegation of ineffectiveness raised before the trial court was properly rejected since 18 months before the hearing on the motion for new trial, OCGA § 24-9-84.1 had withstood a challenge in this Court that the statute denies a defendant his constitutional right to a thorough and sifting cross-examination. *Hinton v. State*, supra, 280 Ga. 811 (7).