In the Supreme Court of Georgia

Decided:    November 16, 2015

S15A1428.  DANIELS v. THE STATE.

HINES, Presiding Justice.

Following the denial of his motion for new trial, as amended, Larry Daniels appeals his conviction and sentence for malice murder in connection with the strangulation death of Latrenda Jennings.  His sole challenge is to the sufficiency of the evidence of his guilt.  Finding the sufficiency challenge to be without merit, we affirm the judgment of conviction for malice murder, but for the reasons discussed in Division 2 we vacate in part and remand the case for resentencing.[1]

---

[1] The murder and related crimes occurred on April 21, 1991.  On August 24, 2010, a Fulton County grand jury returned a five-count indictment against Daniels: Count (1) - malice murder; Count (2) - felony murder while in the commission of aggravated assault; Count (3) - felony murder while in the commission of rape; Count (4) - aggravated assault; and Count (5) - rape.  Daniels was tried before a jury June 18-22, 2012, and found guilty of all charges.  On June 22, 2012, he was sentenced as a recidivist to life in prison without the possibility of parole on Count (1), to run consecutively to the sentences he was already serving; the verdicts on Counts (2) and (3) stood vacated by operation of law, and the verdicts on Counts (4) and (5) were found to merge with the verdicts on Counts (2) and (3) for the purpose of sentencing.  Following imposition of this sentence, the trial court became aware that sentencing Daniels as a recidivist, and consequently, to life in prison without the possibility of parole was improper.  On July 17, 2012, the trial court entered an amended sentence of life in prison on Count (1) to run consecutively to the sentences Daniels was

The evidence, construed in favor of the verdicts, showed the following. On the morning of April 21, 1991, the police responded to a call from a jogger reporting a dead body found near the running track of a high school in Fulton County. The body, which was later identified as that of Latrenda Jennings, was lying on the ground face up with legs spread. The woman's outer pants were off, her leggings were partially removed, and there was a belt wrapped in a knot around her neck; the woman's mud-and-urine- covered jeans were found nearby. Various personal effects were also found at the scene including a crack pipe, lighters, and a pocketbook. The police later learned that in the months leading up to her death, Jennings had been using drugs and working as a prostitute.

An autopsy revealed that Jennings died as the result of ligature strangulation. She also had a laceration to her vagina, which injury was still oozing fresh blood when her body was found, as well as abrasions on her left eyebrow, arm, shoulder, lower back, and buttocks. The abrasions were

then serving; the verdicts on Counts (2) and (3) stood vacated by operation of law, and the verdicts on Counts (4) and (5) were again found to merge with the verdicts on Counts (2) and (3) for the purpose of sentencing. A motion for new trial was filed on July 30, 2012, and an amended motion for new trial was filed on December 2, 2013. The motion for new trial, as amended, was denied on May 5, 2014. A notice of appeal was filed on May 12, 2014, and the case was docketed in this Court for the April 2015 Term. The appeal was submitted for decision on the briefs.

2

consistent with someone struggling while lying on her back, and the vaginal laceration was consistent with "traumatic intercourse." The medical examiner completed a sexual assault evidence kit on Jennings, swabbing her mouth, anus, breasts, and vagina. The swabs were sent to the Georgia Bureau of Investigation (GBI) Crime Lab. An analysis of the vaginal swabbing revealed intact spermatozoa from only one unidentified donor; inasmuch as spermatozoa can stay in the body as long as 72 hours but tend to break up over time, the spermatozoa collected from the sexual assault evidence kit suggested that they had been in Jennings's body for only a short period of time. At the time of the crimes, no national database of DNA profiles existed, and there were no suspects with which to do a DNA comparison. The file was classified as a cold case.

In May 2009, the Fulton County District Attorney Cold Case Squad reviewed the file and discovered the sexual assault evidence kit performed on Jennings. The kit was sent to a DNA lab which generated a DNA profile from the vaginal swabbing. The DNA profile was compared to that of a man who had been a potential lead in the case, but the profiles did not match. In December 2009, the Combined DNA Index System (CODIS), a national database of DNA

profiles, returned a match for the DNA profile generated from the sexual assault evidence kit. The DNA found in Jennings's body matched that of Daniels. Daniels was brought in for questioning and a new sample of his DNA was obtained via a search warrant. An analysis of the new sample confirmed that Daniels's DNA matched that of the spermatozoa found in the victim's vagina. During the police interview, Daniels was shown a photographic lineup that included a photograph of Jennings. Daniels denied knowing any of the women in the lineup, but later admitted that he could not say he had never met the victim. Daniels admitted previously trading crack cocaine for sex with women, but said that none of these transactions had ever resulted in violence. While Daniels stated that he was familiar with the area where Jennings's body was found, he denied spending time there. However, he also stated that he had played sports at the high school where Jennings's body was found while he was attending a nearby rival high school.

During the investigation, officers learned that Daniels had attacked a woman nine months prior to Jennings's murder. On July 11, 1990, Daniels offered to give the woman a ride home, but instead drove her to a park where he began beating and choking her while pulling at her clothes and breasts. Police

were dispatched to the scene and observed Daniels kicking the woman as she lay on the ground. Daniels was caught and arrested after he attempted to flee. The incident occurred in the vicinity of the high school where Jennings's body was found.

1. Daniels contends that no rational finder of fact could have found that the State proved his guilt beyond a reasonable doubt because the State failed to introduce any evidence to establish that the DNA profile obtained from the victim's vaginal swabbing could have come only from the murderer. He urges that the State's evidence failed to exclude the reasonable hypothesis that he had unprotected consensual sex with the victim within a 72-hour period prior to her murder by an unknown assailant.

Certainly, pursuant to both former OCGA § 24-4-6, in effect at the time of Daniels's trial, and current OCGA § 24-14-6, in order to convict Daniels based solely upon circumstantial evidence, the facts proven at trial had to be consistent with the hypothesis of his guilt and exclude every other reasonable hypothesis. *Roberts v. State*, 296 Ga. 719, 722(1) (770 SE2d 589) (2015). However, every hypothesis is not reasonable, and the trial evidence need not exclude every conceivable inference or hypothesis; it must rule out only those

5

that are reasonable. *Merritt v. State*, 285 Ga. 778, 779(1) (683 SE2d 855) (2009). Principally, the jury is to determine the reasonableness of a defendant's offered theory, and when the jury is authorized to find that the evidence, albeit circumstantial, is sufficient to exclude every reasonable hypothesis save that of the guilt of the defendant, this Court does not disturb that finding unless it is insupportable as a matter of law. *Akhimie v. State*, __ Ga. __ (Case No. S15A0733, decided Sept. 14, 2015). And, that is plainly not the situation in this case.

The state in which Jennings's body was discovered, and its location which was well familiar to Daniels, coupled with the DNA evidence linking only Daniels to Jennings, the evidence that the sexual intercourse was close in time to the murder, Daniels's differing stories to police, and the evidence of prior similarly violent sexual conduct by Daniels were sufficient to support the jury's conclusion that Daniels assaulted, raped, and murdered Jennings as opposed to having engaged in consensual sex with her prior to her death at the hands of another. See *Walker v. State*, 282 Ga. 406, 408 (651 SE2d 12) (2007). Indeed, the jury was authorized to reject as unreasonable the alternate theoretical possibility that Daniels had unprotected consensual sexual intercourse with

6

Jennings at some point within 72 hours of her murder, and that an unknown assailant sometime thereafter had protected non-consensual sexual intercourse with Jennings or at least left behind no traces of DNA recoverable through the sexual assault evidence kit and then murdered Jennings. Id.

Simply, the evidence was sufficient to enable a rational trier of fact to find Daniels guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U.S. 307(99 SCt 2781, 61 LE2d 560) (1979).

2. Even though the evidence was sufficient to support the guilty verdicts, there was error with regard to the trial court's merger for judgment and sentencing of Count (4), aggravated assault, with Count (2), felony murder while in the commission of aggravated assault, and of Count (5), rape, with Count (3), felony murder while in the commission of rape. Such error stemmed from the trial court's failure to recognize that the alternative felony murder counts did not merge but rather stood vacated by operation of law as simply surplusage. *Hulett v. State*, 296 Ga. 49, 53 (2) (766 SE2d 1) (2014), citing *Malcolm v. State*, 263 Ga. 369, 372(4) (434 SE2d 479) (1993). Thus, there were no felony murder counts into which the underlying felonies could merge, and

the trial court erroneously determined that the aggravated assault and the rape merged as a matter of law into such counts. *Hulett v. State* at 53 (2). Instead the trial court should have determined whether such underlying felonies merged, as a matter of fact, into the malice murder count. Id.

Count (1) of the indictment charged Daniels with the malice murder of Jennings by strangling her with a ligature. Count (4) charged Daniels with aggravated assault "with an object" by strangling Jennings with a ligature. Therefore, the aggravated assault merged as a matter of fact into the malice murder. However, Count (5) of the indictment which charged Daniels with the rape of Jennings did not so merge; therefore, Daniels should have been sentenced on this count. Id. at 55 (2). Accordingly, the case is remanded to the trial court for resentencing on Count (5). Id.

Judgment of conviction affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.