### S16A0936. HERNANDEZ v. THE STATE.
(792 SE2d 373)

NAHMIAS, Justice.

Appellant Fernando Hernandez challenges his convictions for malice murder and a firearm offense in connection with the shooting death of Edgar Rodriguez-Gonzalez. Appellant contends that the trial court erred in allowing the jurors to submit questions to be asked to

---

the witnesses and in ruling that part of his custodial statement to the police was admissible. He also asserts that his trial counsel provided ineffective assistance. We affirm.[1]

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On the morning of Labor Day 2010, the victim came to the house in Atlanta that Appellant shared with his wife, his son, his younger brother Octavio, and a couple of friends, including Jorge Vargas. The victim was a friend of Vargas, who met him in front of the house and noticed that he was intoxicated and carrying a shotgun. Octavio and Appellant's son were also outside. The victim asked Vargas to keep the shotgun at the house, but Vargas declined. At some point after that, the victim lost control of the gun and accidentally shot Octavio in the lower leg and foot. Appellant came running out of the house and saw his brother bleeding and the victim holding a shotgun. Appellant wanted to call 911, but the victim, fearing immigration problems if the police came, asked him not to call. Appellant agreed, and he and his wife drove Octavio to the hospital, where Octavio was treated and released. The victim initially agreed to help pay Octavio's medical bills, but later refused when Appellant asked him to pay.

About two months after Octavio was shot, on Sunday, October 31, 2010, Appellant was at home drinking when Vargas and a friend came to pick him up to go to the store. The three men ran into one of the victim's roommates, who asked for a ride to his house to pick up his wallet and phone. When they arrived at the victim's house, a group of men were out front standing around a fire. The victim's roommate went inside to get his wallet and phone. At some point, Appellant also went inside, went into the victim's bedroom, and shot the victim three times with a handgun. One of the bullets entered the victim's chest and went through the major blood vessels coming out of the top of his heart; this wound ultimately killed him. A second bullet entered the victim's right hip, and the third bullet entered the right side of the victim's back.

---

[1] The victim was killed on October 31, 2010. On January 28, 2011, a Fulton County grand jury indicted Appellant for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. Trial began on November 13, 2012, and on November 19, the jury found Appellant guilty of all charges. The trial court sentenced him to serve life in prison for malice murder and a consecutive term of five years on probation for the firearm charge. The felony murder verdict was vacated by operation of law, and the aggravated assault verdict merged. Appellant filed a timely motion for new trial, which he amended with new counsel on January 21, and March 7, 2014. After an evidentiary hearing, the trial court denied the motion on February 26, 2015. On May 15, 2015, Appellant was granted permission to file an out-of-time appeal, which he did, and the case was docketed in this Court for the April 2016 term and submitted for decision on the briefs.

The group outside heard the gunshots, and one of the men immediately ran inside. He found Appellant standing in the victim's room holding the gun and the victim lying on the floor bleeding. The man took the gun from Appellant and pushed him down, then put the gun on top of an entertainment stand and ran out of the house. None of the men outside heard a struggle before the gunshots. None of the victim's roommates had ever seen him with a gun, and they did not recognize the gun found in his room.

Appellant came out of the house crying, and he told the group outside that he killed the victim. Shortly thereafter, the police arrived and asked who shot the victim; Appellant responded in English, "I did." Appellant was arrested, and the police entered the house and found the victim lying on the floor of his room with a faint pulse. The police found the gun on top of the entertainment stand; the victim had no weapons on or around him. The room did not show signs of a struggle, and the victim had no injuries other than the gunshot wounds. The victim also had a blood alcohol content of 0.199 at the time of his death and likely would have been slow to react to any situation. Appellant did not have any visible injuries or scratches indicative of a struggle. In an interview at the police station, Appellant said that he felt sad for what he did, but he did what he did. He made no mention of acting in self-defense.

At trial, Appellant testified that he had acted in self-defense after the victim pulled a gun on him. Appellant claimed that he disarmed the victim and shot him while they were wrestling on the floor.

Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Anthony v. State*, 298 Ga. 827, 829 (785 SE2d 277) (2016) ("The jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense."); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citations omitted)).

2. At the beginning of the trial, the court told the jurors that they could submit written questions for the witnesses. After each witness had been examined by the parties, the jurors could submit their questions, if any, to the court. The questions were then shared with

counsel, who were given an opportunity to object before the court posed any questions it found proper to the witness. The parties were also allowed to ask follow-up questions to the witness. Using this procedure, the trial court asked more than 70 questions from the jury; the jurors submitted no questions for some witnesses, while the court asked other witnesses more than ten jury questions.

Appellant claims that the trial court erred by soliciting the jury for questions to ask the witnesses and by asking the witnesses so many jury questions. But these objections to the process for and quantity of jury questions were not raised at trial, where Appellant objected only to some specific questions, and thus his claims were not preserved for review on appeal. See *Quintanilla v. State*, 273 Ga. 20, 21 (537 SE2d 352) (2000); *Matchett v. State*, 257 Ga. 785, 786 (364 SE2d 565) (1988).

In any event, we see no error. The trial court followed the procedure for juror questions approved by this Court. As we reiterated in *Allen v. State*, 286 Ga. 392 (687 SE2d 799) (2010), "[w]hile jurors in Georgia courts may not ask questions of witnesses directly, a trial court may receive written questions from the jury and ask those questions which the court finds proper, or allow counsel for either party to ask a testifying witness the questions found to be proper." Id. at 396-397. See also *Matchett*, 257 Ga. at 786 (explaining that "[t]he trial court properly instructed the jury as to the appropriate form of asking questions," which was "to submit any questions they might wish to have answered to the trial court in writing at the conclusion of the witness'[s] testimony").

Moreover, Appellant has not identified in his brief a single jury question asked by the court that was improper, much less harmfully so. See *Hoehn v. State*, 293 Ga. 127, 129 (744 SE2d 46) (2013) (finding that a juror question improperly asked directly to a witness was harmless error). Nor has Appellant identified any question or set of questions that the court asked on behalf of the jury which improperly intimated the court's opinion about the evidence or Appellant's guilt or innocence. See OCGA § 17-8-57; *Lance v. State*, 275 Ga. 11, 22 (560 SE2d 663) (2002) ("The trial court did not abuse its discretion in propounding the [jury] questions at issue in a manner that intimated no opinion held by the trial court in an effort to fully develop the truth of the case."). Although trial courts must be cautious in soliciting and asking jury questions, particularly in large numbers, we cannot say that the trial court here deviated from the proper procedure or otherwise abused its discretion as to the jury questions that were asked.

3. After his arrest, Appellant was taken to the police station to be interviewed. A detective asked a Spanish-speaking officer to read

Appellant his *Miranda* rights in Spanish. Appellant indicated in Spanish that he wanted an attorney. After the detective and the Spanish-speaking officer confirmed that Appellant wanted a lawyer, they asked him some routine booking questions. Appellant kept talking, repeatedly asking what he had to do to get an attorney, and the officers assured him that one would be appointed for him. Following this exchange, Appellant said that he felt sad for what he did, but he did what he did. The trial court admitted Appellant's statements to this point in the interview, ruling that this one somewhat incriminating statement was unsolicited.[2]

Appellant contends that this ruling was error because the statement came after he invoked his right to counsel. We disagree. When Appellant unequivocally invoked his right to counsel, the police had an obligation to stop interrogating him, but they were not required to stop listening to what he chose to say. See *State v. Brown*, 287 Ga. 473, 480 (697 SE2d 192) (2010). The incriminating statement at issue was volunteered rather than elicited by interrogation, and thus it was properly admitted at trial. See id.

4. Finally, Appellant claims that his trial counsel provided constitutionally ineffective assistance in two respects. To prevail on this claim, Appellant must show both that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington*, 466 U. S. 668, 691-694 (104 SCt 2052, 80 LE2d 674) (1984); *Long v. State*, 287 Ga. 886, 891 (700 SE2d 399) (2010). Appellant has not made this showing.

Appellant asserts first that his trial counsel was ineffective in failing to object to the trial court's solicitation of jury questions. As discussed above in Division 2, however, Appellant has identified no trial court error in this respect, and his trial counsel cannot be deemed ineffective for failing to make a meritless objection. See *Duvall v. State*, 290 Ga. 475, 477 (722 SE2d 62) (2012).

Appellant also asserts that his trial counsel was ineffective in failing to object to the State's closing argument, during which Appellant contends that the prosecutor improperly commented on his silence in violation of the evidentiary rule this Court adopted in *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991), by arguing that Appellant did not say that he had acted in self-defense until he

---

[2] After the Spanish-speaking officer translated that statement, the detective began to pose questions about the shooting. The trial court suppressed Appellant's subsequent statements made in response to that interrogation.

testified at trial.[3] It was not improper, however, for the prosecutor to point out inconsistencies and omissions in what Appellant actually said to the group outside the victim's house and to the police shortly after the shooting compared to what he told the jury at trial. See, e.g., *Rush v. State*, 294 Ga. 388, 390-391 (754 SE2d 63) (2014); *Gilyard v. State*, 288 Ga. 800, 802-803 (708 SE2d 329) (2011); *Pye v. State*, 269 Ga. 779, 786-787 (505 SE2d 4) (1998); *McMichen v. State*, 265 Ga. 598, 606 (458 SE2d 833) (1995). Again, trial counsel was not ineffective in failing to make a meritless objection. Moreover, given the collective weight of the evidence refuting Appellant's claim of self-defense, he cannot demonstrate that there is a reasonable probability that, but for the alleged deficiencies in his trial counsel's performance, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Gates v. State*, 298 Ga. 324, 330 (781 SE2d 772) (2016).

*Judgment affirmed. All the Justices concur.*

## DECIDED OCTOBER 17, 2016.

*Genevieve Holmes*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Kevin C. Armstrong, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Haase, Assistant Attorney General*, for appellee.

---

[3] The holding in *Mallory* was based not on the Constitution, but on a provision of Georgia's old Evidence Code, OCGA § 24-3-36, which still applied when this case was tried. The new Evidence Code repealed OCGA § 24-3-36, and we have repeatedly reserved decision on the continuing validity of *Mallory*. See, e.g., *Simmons v. State*, 299 Ga. 370, 374 (788 SE2d 494) (2016). We do so again today.