301 Ga. 100
FINAL COPY

S17A0355. BENTON v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Freedell Benton (III) was found guilty of malice

murder, possession of a firearm by a convicted felon, and various other offenses

in connection with the shooting death of Drexel Berry.[1] On appeal, Benton

_____

[1] On September 10, 2013, Benton was indicted for malice murder, felony murder predicated on assault with a deadly weapon, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault with a deadly weapon, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. Following a January 7-10, 2014 jury trial, Benton was found guilty on all counts. On January 10, 2014, the trial court sentenced Benton to life imprisonment without the possibility of parole for malice murder and five consecutive years for possession of a firearm during the commission of a felony. At that time the trial court purported to merge all of the remaining counts into the malice murder count for sentencing purposes. Benton filed a motion for new trial on January 27, 2014, which he amended on July 20, 2015. The trial court denied the motion on March 4, 2016. On that same date, the trial court amended Benton's sentence to reflect that the felony murder counts against Benton were vacated by operation of law rather than being merged into the malice murder count for sentencing purposes (see Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993)), and merged the remaining aggravated assault count into the malice murder count for purposes of sentencing. Benton filed a timely appeal to this Court on March 14, 2016, which was docketed to the term beginning in December 2016 and submitted for decision on the briefs.

contends that the evidence presented at trial was insufficient to support his conviction, that the trial court erred by allowing the jurors to submit questions to be posed to witnesses, that the trial court erred when it allowed into evidence certain autopsy photographs, and that his trial counsel was ineffective. For the reasons set forth below, we affirm in part, vacate in part, and remand for resentencing on the count of possession of a firearm by a convicted felon.

1. Viewed in the light most favorable to the jury's verdict, the record shows that, on May 29, 2013, Benton and his co-defendant, Quantavious Guffie, were part of a group of 15 to 20 people hanging around an apartment complex located at 574 Cooper Street. The victim, Berry, arrived at the complex with Joshua Smith, looking to purchase some marijuana. The group informed Berry that they had no marijuana to sell, and Berry began to leave. One of the members of the group, Antoine Jester, was wheelchair bound, and informed others, including Benton, that Berry had played a role in putting Jester in a wheelchair, because Berry was one of the individuals involved in a prior shooting that had paralyzed Jester. After speaking with Jester, Benton stepped into the street to flag down Smith's car and prevent Berry from leaving.

2

Benton informed Berry that if he returned to the apartment complex, Benton would sell him some marijuana. While Benton spoke to Smith and Berry, co-defendant Guffie entered one of the apartments and retrieved a handgun. Berry agreed to return to the complex while Smith waited in the car, and Benton led him to a courtyard area behind the complex where Guffie joined them.

Two eyewitnesses from the apartment complex who saw the men near the courtyard stated that following a brief discussion between the three men, Berry began to run, while Benton and Guffie pursued and fired guns at Berry.[2] The three ran out of the witnesses' sight, but more shots could be heard coming from the courtyard. A few minutes later, only Benton and Guffie emerged from the stairwell leading to the courtyard.

A police officer found Berry at a house located at 580 Pryor Street. Berry had moved from the apartment complex to the house, leaving a blood trail back to the courtyard where police found ten 9mm shell casings and one .380 caliber shell casing. Berry had been shot three times, once in the arm, once in the leg, and once in the back. Police found Berry drifting in and out of consciousness,

---

[2] The testimony of the eyewitnesses was also supported by video surveillance evidence from the apartment complex that was introduced at trial.

and moved him to a hospital, where he died.

The evidence was sufficient to enable a rational trier of fact to find Benton guilty of all the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-21 (parties to a crime).[3]

2. Although the evidence was sufficient to support the jury's guilty verdicts, we have noted an error with respect to the merger of certain counts for sentencing purposes. Specifically, the trial court purported to merge the possession of a firearm by a convicted felon count against Benton into the malice murder count against him for sentencing purposes. However, "possession of a firearm by a convicted felon does not merge into a conviction

---

[3] Benton also contends that the evidence was insufficient to prove venue, specifically that no one at trial testified that 574 Cooper Street is in Fulton County. However, during the trial, the responding officer, Officer Michael Searcy, testified that he worked in Zone 3, and that Zone 3 falls entirely within Fulton County. Officer Searcy also testified that the blood trail that connected 574 Cooper Street to 580 Pryor Street was in Fulton County. Under "the well-settled principle that public officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise," the evidence was sufficient for the jury to find that venue was proven to be in Fulton County. Chapman v. State, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002).

for malice murder." Chester v. State, 284 Ga. 162, 162 (1) (664 SE2d 220) (2008), overruled on other grounds by Williams v. State, 287 Ga. 192, 194 (695 SE2d 244) (2010), and Harper v. State, 286 Ga. 216, 218 (1) (686 SE2d 786) (2009). "[A]s no merger occurred, [Benton] should have been sentenced on [the possession of a firearm] count." Hulett v. State, 296 Ga. 49, 55 (2) (b) (766 SE2d 1) (2014). Accordingly, we vacate the portion of the sentence purporting to merge the possession of a firearm by a convicted felon count into the malice murder count and remand this case to the trial court for resentencing on the possession of a firearm count.

3. Benton claims that the trial court erred by allowing jurors to submit questions to be posed to the witnesses. However, it is well established that, "[w]hile jurors in Georgia courts may not ask questions of witnesses directly, a trial court may receive written questions from the jury and ask those questions which the court finds proper, or allow counsel for either party to ask a testifying witness the questions found to be proper." Allen v. State, 286 Ga. 392, 396 (3) (687 SE2d 799) (2010). See also Hernandez v. State, 299 Ga. 796, 799 (2) (792 SE2d 373) (2016). Here, the written questions were properly reviewed by

5

the trial judge and counsel for the parties before being posed to the witnesses by the trial court once the court found the questions to be proper. The trial court committed no error by following the approved procedure outlined in Allen and its progeny.

To the extent that Benton argues that the trial court erred by failing to use the exact words that the jurors used in their written questions when the court posed the questions to the witnesses, this argument is without merit. Indeed, a trial court is not required to use the exact language of the jurors in posing their questions, as "[a] trial judge may propound questions to a witness to develop the truth of the case, to clarify testimony, to comment on pertinent evidentiary rules and to exercise its discretion when controlling the conduct of counsel or witnesses in order to enforce its duty to ensure a fair trial to both sides." Dickens v. State, 280 Ga. 320, 324 (3) (627 SE2d 587) (2006). The judge here reviewed and approved the questions by the jurors and posed them in the manner that he believed to be most appropriate for developing the truth of the case and clarifying the witness' testimony consistent with the jurors' requests. In doing so, the trial court fulfilled its duty to ensure a fair trial for both sides

and did not inappropriately intimate or express an opinion as to the matters proved at trial or the guilt or innocence of the accused. See OCGA § 17-8-57 (a) (1). Accordingly, we find no error.

4. Benton contends the trial court committed plain error by admitting into evidence three autopsy photographs (Exhibits 115, 126, and 127).[4] To satisfy plain error review:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Citation, punctuation and emphasis omitted.) State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). Our determination of whether legal error exists

---

[4] Benton did not object to the admission of the photographs at trial, so review of this issue on appeal under Georgia's new Evidence Code is limited to review for plain error. OCGA § 24-1-103 (d); Jones v. State, 299 Ga. 40 (785 SE2d 886) (2016).

requires us to first consider whether the autopsy photos constituted relevant, admissible evidence.

> Under Georgia's new Evidence Code, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403 ("Rule 403"). The application of Rule 403 is a matter committed principally to the discretion of the trial courts, and as we have explained before, the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly. See Davis v. State, 299 Ga. 180, 189 (2) (b) (787 SE2d 221) (2016); Olds v. State, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016).

Plez v. State, 300 Ga. 505, 507-508 (3) (796 SE2d 704) (2017).

Here, Exhibit 127 depicted an incision the medical examiner made in a bruise to demonstrate the location of the bullet lodged in Berry's chest cavity and the path it took through Berry's body to cause the bruising. The photo is not particularly gory or gruesome, and it was "relevant to show the nature and location of the victim's injuries, which corroborated the account of the shooting given by" the eyewitnesses who saw Benton and Guffie chasing and firing at Berry from behind. Moss v. State, 298 Ga. 613, 617-618 (5) (b) (783 SE2d 652) (2016). Exhibit 126 showed an overview of the bruising caused by the

8

bullet lodged just beneath Berry's skin, which was the same injury that was explored further through a closeup in Exhibit 127. It is within the trial judge's discretion to admit into evidence two photos of the same injury that present different perspectives of that injury. Allaben v. State, 299 Ga. 253, 260 (3) (f) (787 SE2d 711) (2016). Finally, Exhibit 115 depicted an overall view of Berry's external injuries with some pre-autopsy incisions, and "photographic evidence that fairly and accurately depicts a body or crime scene and is offered for a relevant purpose is not generally inadmissible under Rule 403." Plez, supra, 300 Ga. at 508 (3). Benton has failed to demonstrate any error, let alone plain error, from the trial court's admission of these photographs into evidence.

5. Benton contends that his counsel was ineffective for failing to: (1) object to a detective's testimony on the ultimate issue in the case; (2) object to the admission of the autopsy photographs; (3) challenge a police photo array for being too suggestive; (4) disclose prior convictions that trial counsel planned to use for impeachment purposes; and (5) properly investigate the case.

> In order to succeed on his claim of ineffective assistance, [Benton] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland

9

v. Washington, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

At the motion for new trial hearing, no testimony was elicited from trial counsel as to Benton's first four allegations of ineffective assistance. Accordingly, we must assume that trial counsel's decisions with respect to these matters were strategic, and, because such decisions were reasonable under the circumstances, Benton's claims of ineffective assistance of counsel on those grounds must fail. See Washington v. State, 285 Ga. 541, 543 (3) (a) (i) (678 SE2d 900) (2009) ("[I]n the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim.").[5]

---

[5] We note that, with respect to Benton's fourth allegation in particular, to the extent that Benton could possibly have shown deficient performance based on his counsel's failure to allegedly give proper notice about the use of prior convictions at trial for impeachment purposes, Benton has not indicated what

With respect to Benton's fifth allegation, failure to prepare for trial, Benton claims that his counsel's lack of preparedness was shown by her failure to cross-examine one of the eyewitnesses, Lakesi Moore, about whether she actually saw the shooting and whether she held potential bias for having previously sought compensation for her testimony. Specifically, Moore testified at trial that she did not actually see Benton shoot Berry, but in a recorded phone call with police that was later introduced at trial she said that she had seen the shooting, and she asked the police whether she could receive compensation for her testimony. Benton contends that, because counsel had not listened to the recording prior to trial, she prevented herself from being able to effectively cross-examine this eyewitness about her potential bias and lack of credibility.

To the extent that trial counsel's performance could have been deficient for failing to listen to the recording prior to trial, she did listen to the recording before it was introduced into evidence, and, in an effort to address the inconsistencies between the recording and Moore's trial testimony, she

convictions in particular, if any, trial counsel did not properly disclose for use at trial. Accordingly, we find no prejudice. See <u>Wallace v. State</u>, 294 Ga. 257, 259 (3) (a) (754 SE2d 5) (2013).

11

questioned the police officer through which the recorded call had been introduced about Moore's reliability, and she highlighted Moore's credibility problems during her closing argument. Counsel even specifically stated during her closing argument:

> [Moore] was asking about an award [sic] [for her testimony]. [Moore] knows that she could not come into court . . . and tell anybody that [she] saw a shooting that she did not see. She said: I couldn't see it. I told you there would be no credible eyewitness that you'd believe. . . .

Accordingly, we find no prejudice. Indeed, by attacking Moore's credibility during her closing argument and through her cross-examination of the police detective, counsel was still able to highlight for the jury the inconsistencies between the recording and Moore's testimony even without cross-examining her about them. See Redding v. State, 297 Ga. 845, 853 (5) (c) (778 SE2d 774) (2015).

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.

Decided May 1, 2017.

12

Murder. Fulton Superior Court. Before Judge McBurney.

Akil K. Secret, for appellant.

Paul L. Howard Jr., District Attorney, Paige Reese Whitaker, Lyndsey H. Rudder, Cynthia Cartwright, F. McDonald Wakeford, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth M. Haase, Assistant Attorney General, for appellee.