304 Ga. 781
FINAL COPY

S18A1363. WILLIS v. THE STATE.

BLACKWELL, Justice.

Christopher Antwan Willis was tried by a Spalding County jury and convicted of murder and other crimes in connection with the shooting death of Robert Lee Murry, Jr. Willis appeals, arguing that the evidence is insufficient to sustain his convictions, that the trial court abused its discretion when it admitted certain testimony from a crime scene investigator, and that the trial court erred when it failed to instruct the jury that a murder conviction carries a mandatory life sentence. Finding no reversible error, we affirm.[1]

---

[1] Murry was killed on August 13, 2014. A Spalding County grand jury indicted Willis on October 16, 2014, and it issued a superseding indictment on July 16, 2015, charging him with malice murder, felony murder, aggravated assault of Murry, aggravated assault of Murry's father (Robert Murry, Sr.), two counts of possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Willis was tried in February 2016, and the jury found him guilty on all counts. The trial court sentenced Willis to life imprisonment for malice murder, a consecutive 20-year term for the aggravated assault of Murry's father, a consecutive five-year term for one count of possession of a firearm during the commission of a felony (plus a five-year concurrent term for the other such count), and a five-year consecutive term to be served on probation for the felon-in-possession count. The other counts merged or were vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 373 (5) (434 SE2d 479) (1993). Willis moved for a new trial on February 29, 2016, and he amended the motion on August 29, 2016. After a hearing, the trial court denied the motion

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows the following. Murry and his brother, Timothy, worked at an auto repair shop in Griffin that was owned by their father. The shop consisted of an outside car lot and a building that housed an office and a garage. On August 13, 2014, Willis came to the shop with his girlfriend and her mother. While the women waited, Willis approached Timothy and asked to see Murry, ostensibly about a car that Willis had brought in for repairs about a month earlier. Timothy directed Willis to the office and resumed working outside. After some time, Timothy heard a noise like a gunshot. He looked toward the office building and saw Willis holding a gun and his father checking himself for injuries. As Timothy rushed back to the office, Murry came out with "blood just gushing out of his chest" and fell to the ground. Timothy then saw Willis take off running across the street. Timothy got in his car and followed Willis while calling 911, but he ended the pursuit when Willis ran into some woods. Timothy testified that, on the day of the incident, Murry was unable to use one of his

on November 8, 2016. On March 3, 2017, Willis filed a motion for an out-of-time appeal, which was granted on April 13, 2017. That same day, Willis filed a notice of appeal, and this case was docketed to the August 2018 term of this Court and submitted for a decision on the briefs.

hands — it was in a cast due to a prior unrelated injury.[2]

Murry's father testified that Willis also approached him and politely asked about Murry's whereabouts. The father directed Willis to the office, and, while standing outside the office building, he heard a popping sound and heard Murry say "Oh." Willis then came out of the building with a gun in his hand, looked at the father, and fired the gun toward the father's legs. Fearing that he might have been shot, the father checked himself for injuries. Finding none, he went to check on Murry and saw him walking out of the office with blood pumping out of his chest. Murry collapsed without saying a word, and the father dialed 911. The father testified that, while he did not see a gun on Willis before being shot at, he also did not keep any firearms in the shop and did not know Murry to own one.

Willis was apprehended by police shortly after the shooting. The arresting officer testified that he observed Willis taking off his shirt and attempting to hide in a residential area. When the officer approached, Willis tried to run away but was thwarted by thick vegetation. The officer saw no visible injuries on

---

[2] The forensic pathologist also noted a cast on Murry's hand and forearm. The pathologist testified that the cause of Murry's death was a gunshot wound to the chest.

Willis. The police recovered two spent bullets at the scene — one was lodged in the wall of the office and the other lay outside the building. The police also found a gun inside a storm drain not far from the shop; this gun was later determined to be the one that fired the bullets recovered from the crime scene.[3]

The defense presented several witnesses, including Willis, his girlfriend, and the girlfriend's mother. Willis testified that, on the day in question, he asked his girlfriend's mother for a ride to the shop so he could check on his car. Once he arrived at the shop and found Murry, Willis talked to him about retrieving his car and taking it elsewhere for repairs. According to Willis, Murry became upset and the two men got into a "little shoving match," at which time Murry pulled out a gun. Willis testified that he tried to get the gun away from Murry, and as they struggled over the weapon, the gun discharged and fell. Not realizing that Murry was shot, Willis picked up the gun and tried to run out the door, but encountered the father, who began hitting him with a clipboard. Willis told the father to "get back," but the father hit him again with the clipboard, and the gun

---

[3] The felon-in-possession count was tried separately but before the same jury, immediately after the return of the guilty verdict on the other six counts. To prove this offense, the State introduced a certified copy of Willis's 2003 felony conviction for possession of cocaine.

discharged into the ground. At that point, Willis took off running in fear for his life, as he saw others from the shop coming toward him. Willis asserted that he was unaware that the police were chasing him because they were dressed in plain clothes. He also testified that he took off his shirt to prevent his pursuers from the shop from recognizing him. As to Willis's girlfriend and her mother, both testified that they saw Willis and the father exit the office building at the same time, that the father pushed Willis, that Willis pushed him back, and that Willis then fired at the ground, not at the father.

Willis argues that the evidence is insufficient to sustain his convictions because, he says, the evidence was almost entirely circumstantial, especially as to the killing of Murry, and did not exclude the reasonable possibility that Murry was shot accidentally while Willis was trying to defend himself. See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). But to the extent Willis's convictions rest on circumstantial evidence,[4] this evidence

_____

[4] We note that the aggravated assault of Murry's father and related firearm-possession offense were proved by direct, not circumstantial, evidence, as the father testified that he saw Willis shoot at him without provocation.

5

"need not exclude every conceivable inference or hypothesis; it must rule out only those that are reasonable." Daniels v. State, 298 Ga. 120, 122 (1) (779 SE2d 640) (2015). And it is principally for the jury to determine whether an alternative hypothesis is reasonable. See Warbington v. State, 281 Ga. 464, 465 (1) (640 SE2d 11) (2007).

Here, when viewed in the light most favorable to the verdict, the evidence does not demand the recognition of a reasonable hypothesis of innocence. Eyewitness testimony shows that Willis shot at the father without provocation, fled the scene immediately, and attempted to evade law enforcement by running into a residential area and taking off his shirt. See McClain v. State, 303 Ga. 6, 9 (1) (810 SE2d 77) (2018) (the jury could have considered defendant's flight from the scene immediately after the shooting to be "an act reflecting consciousness of guilt"). Other evidence shows that Murry — who was the aggressor according to Willis — in fact could not use one of his hands due to a prior injury. Although Willis testified that Murry was shot accidentally while Willis was trying to defend himself, and that he did not intentionally shoot at the father, the jury was free to disbelieve Willis's account. See Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) ("[I]t is the role of the jury to resolve

6

conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted)). In sum, the evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Willis was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Willis argues that the trial court erred when it admitted certain testimony from a crime scene investigator that, he contends, amounted to improper non-expert opinion going to the ultimate issue in the case. More specifically, Willis challenges the following testimony from the investigator: (1) that a bullet found in the office wall was the bullet that "killed" Murry; (2) that the two holes in Murry's shirt were the entry and exit wounds from the gunshot; (3) that Murry "may have even been bending" when he was shot, and (4) that, by looking at the "pools of blood or drops of blood" at the scene, it could be determined that the blood must have been "coming from above."

Willis concedes that this claim can be reviewed only for plain error, as he did not object to any of the testimony about which he now complains. See

<u>Benton v. State</u>, 301 Ga. 100, 103 (4) (799 SE2d 743) (2017). To prevail on plain error review, a defendant must make a threshold showing that (1) an error or defect occurred that has not been affirmatively waived; (2) the error was "clear or obvious"; and (3) the error affected the defendant's "substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings." Id. (Citation and punctuation omitted.) If the above three prongs are met, we have the discretion to remedy the error, but "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (Citation and punctuation omitted.) Here, Willis fails to show that the admission of the investigator's testimony, even if erroneous, had any effect on the outcome of his trial court proceedings. Willis never disputed that Murry was killed by a bullet in the office; his defense was that the gun discharged accidentally during a struggle. He does not explain, nor is it clear, how the investigator's statements at issue were inconsistent with Willis's testimony or otherwise prejudicial to his defense. For this reason, Willis has not shown plain error.[5]

---

[5] Willis also argues that he was denied the effective assistance of counsel when his trial lawyer failed to object to the aforementioned testimony of the crime scene investigator. See <u>Strickland v. Washington</u>, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984) (to establish ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient

3. Lastly, Willis contends that the trial court erred when it failed to instruct the jury that a guilty verdict on either of the murder counts would result in a mandatory life sentence. Again, Willis concedes that this claim is reviewable only for plain error, as he did not request such a jury instruction. See Woodard v. State, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015). Willis cites no controlling authority suggesting that a judge is required to inform the jurors, prior to their reaching the verdict, that a defendant would face a particular mandatory sentence if found guilty. Indeed, we have held otherwise. See Johnson v. State, 276 Ga. 57, 59 (2) (573 SE2d 362) (2002) ("[T]he trial court did not err when it declined to inform the jury that, should he be found guilty, appellant faced a minimum sentence of ten years' imprisonment."). Thus, Willis has not shown any error in this regard, much less a clear and obvious one. See Benton, 301 Ga. at 103 (4). See also Doleman v. State, 304 Ga. 740 (4) (      SE2d   ) (2018) (no plain error in trial court's failure to instruct jury about mandatory sentence for murder).

Judgment affirmed. All the Justices concur.

---

and that this deficient performance prejudiced the defense). See also Blount v. State, 303 Ga. 608, 609 (1) (814 SE2d 372) (2018). Given our conclusion that Willis cannot establish any prejudice from the admission of the investigator's testimony, as discussed above, he also cannot establish any prejudice from his trial lawyer's failure to object to that testimony. See Hampton v. State, 302 Ga. 166, 168-169 (2) (805 SE2d 902) (2017) ("[T]his Court has equated the prejudice step of the plain error standard with the prejudice prong for an ineffective assistance of counsel claim.").

Decided December 10, 2018.

Murder. Spalding Superior Court. Before Judge Sams.

Bentley C. Adams III, William A. Adams, Jr.; Veronica M. O'Grady, for appellant.

Benjamin D. Coker, District Attorney, B. Ashton Fallin, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General, for appellee.